## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NATIONAL LIGHTING COMPANY, INC., a New Jersey Corporation, | ) ) ) | Civil Case No. 08-3150 (NRB) ECF CASE |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| BRIDGE METAL INDUSTRIES, LLC, a New York Limited Liability Company; JOSEPH MESSA, an individual; GALAXY SWITCHGEAR INDUSTRIES, LLC, a New York Limited Liability Company; BLAISE FREDELLA, an individual; ISAK LEMBERG, an individual; BORIS BREGMAN, an individual; PICASSO LIGHTING INDUSTIRES LLC, a New York Limited Liability Company; INDEPENDENT LIGHTING, LLC, a New York Limited Liability Company; GREEN LIGHT SOLUTIONS, LLC; and MITCHELL BLOOMBERG, an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendant. | ) ) ) | |

---

### MEMORANDUM OF LAW IN SUPPORT OF BRIDGE METAL INDUSTRIES, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

---

Sean Mack (SM 2016)
PASHMAN STEIN, PC
1375 Broadway
10th Floor
New York, New York 10018
(212) 995-2727

- and -

21 Main Street, Suite 100
Hackensack, New Jersey  07601
(201) 488-8200

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

I.      Plaintiff's Reverse Palming Off And False Designation Of Origin Claims
        Are Deficient As A Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

II.     Plaintiff's Claims Of False Advertising And Labeling And Deceptive Trade
        Practices Should Be Dismissed  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

III.    Plaintiff's Tortious Interference With Prospective Business Relations
        Claim Should Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

IV.     Plaintiff's Product Design Trade Dress Claim Should Be Dismissed. . . . . . .11

V.      Plaintiff's Claims of Unfair Competition Claims Should Be Dismissed. . . . . 14

VI.     Plaintiff's Breach of Contract Claim Should Be Dismissed. . . . . . . . . . . . . .14

VII.    Plaintiff's Claim Of Breach Of Implied Covenant Of Good Faith Fails As
        A Matter Of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VII.    National Is Not Qualified to Pursue Only State Law Claims. . . . . . . . . . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# <u>TABLE OF AUTHORITIES</u>

<u>CASES:</u>

<u>Andre Strishak & Assoc. v. Hewlett Packard Co..,</u>
     752 N.Y.S.2d 400 (App. Div. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 8

<u>Blank v. Pollack,</u>
     916 F. Supp. 165 (N.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Christopher A. Vinas, CPA v. Chubb Corp.,</u>
     499 F. Supp.2d 427 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Contractual Obligation Productions, LLC v. AMC Networks, Inc.,</u>
     2008 WL 793603 (S.D.N.Y. March 28, 2008). . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Dastar Corp. v. Twentieth Century Fox Film Corp. ,</u>
     123 S. Ct. 2041 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

<u>Eagle Comtronics, Inc. v. Pico, Inc.,</u>
     453 N.Y.S.2d 470 (App. Div. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

<u>Goshen v. Mutual Life Ins. Co. of NY,</u>
     98 N.Y.2d 314 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Grand Heritage Management, LLC v. Murphy,</u>
     2007 WL 3355380 (NRB) (S.D.N.Y. Nov. 7, 2007) . . . . . . . . . . . . . . . . . . . . 17

<u>Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,</u>
     50 N.Y.2d 183 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Harris v. Provident Life & Accident Ins. Co.,</u>
     310 F.3d 73 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Hudson Hotels Corp. v. Choice Hotels Int'l,</u>
     995 F.2d 1173 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Ivy Mar. Co. v. C.R. Seasons Ltd.,</u>
     1998 WL 704112 (E.D.N.Y. Oct. 7, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Jaret Int'l, Inc. v. Promotion in Motion, Inc.,</u>
     826 F. Supp. 69 (E.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>La Cibeles, Inc. v. Adipar, Ltd.</u>
     2000 WL 1253240 (S.D.N.Y. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Landscape Forms, Inc. v. Columbia Cascade Co.,
        113 F.3d 373 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Lehman v. Dow Jones & Co., Inc.,
        783 F.2d 285 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Lipton v. Nature Co.,
        71 F.3d 464 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

Magnalock Corp. v. Schnabolk,
        65 F.3d 256 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.,
        292 F.Supp.2d 535 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

Morris v. Buffalo Chips Bootery, Inc.,
        160 F.Supp. 2d 718 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Nadel v. Play-by-Play Toys & Novelties, Inc.,
        208 F.3d 368 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,
        85 N.Y.2d 20 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Perkins School for the Blind v. Maxi-Aids, Inc.,
        274 F.Supp.2d 319 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

S&L Vitamins, Inc. v. Australian Gold, Inc.,
        521 F.Supp.2d 188 (E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

SD Protection, Inc. v. Del Rio,
        498 F.Supp.2d 576 (E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Shared Comm'n Servs. of ESR, Inc. v. Goldman Sachs & Co.,
        803 N.Y.S.2d 512 (App. Div. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Shevy Custom Wigs, Inc. v. Aggie Wigs,
        2006 WL 3335008 (E.D.N.Y. Nov. 17, 2006) . . . . . . . . . . . . . . . . . . . . . . . .12, 14

Siradas v. Chase Lincoln First Bank, N.A.,
        1999 WL 787658 (S.D.N.Y. Sept. 30, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.,
        380 F.3d 126 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Speciner v. Reynolds Metals Co.,**
   **279 F.2d 337 (2d Cir. 1960)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

**Tierney v. Omnicom Group, Inc.,**
   **2007 WL 2012412 (S.D.N.Y. 2007)** . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . 18

**TrafFix Devices, Inc. v. Marketing Displays, Inc.,**
   **532 U.S. 23 (2001)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

**Wal-mart Stores, Inc. v. Samara Bros, Inc.,**
   **529 U.S. 205 (2000)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

**Walt Disney Co. v. Goodtimes Home Video Corp.,**
   **830 F. Supp. 762 (S.D.N.Y. 1993)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Yurman Design, Inc. v. PAJ, Inc.,**
   **262 F.3d 101 (2d Cir. 2001)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

**STATUTES:**

**New York General Business Law § 350** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 8

**New York General Business Law § 349** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 8

**New York General Business Law § 1312.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## PRELIMINARY STATEMENT

Plaintiff National Lighting Company, Inc. ("National"), a manufacturer of commercial lighting fixtures, in a sweeping fourteen count complaint, broadly alleges that ten defendants who are alleged to be alter egos of each other, including Bridge Metal Industries, LLC ("BMI"), schemed to improperly use National's trade secrets to manufacture lighting fixtures that are "virtual clones" of National's products. National proclaims that its lighting fixtures are so distinctive that the design of its lights is entitled to trade dress protection, and therefore defendants are not permitted to manufacture and sell copies of plaintiff's light fixtures. Beyond those conclusory allegations, which are repeated often in the amended complaint, there are sparse facts plead to support plaintiff's $30 million claim.

Plaintiff's amended complaint is deficient as a matter of law and should be dismissed for a variety of reasons. First, plaintiff's claims that defendants are reverse palming-off plaintiff's products and have falsely designated the origin of the products that defendants are selling is fundamentally flawed because plaintiff has not plead, as it must, that it produced the goods in question. To the contrary, the amended complaint alleges that defendants produced the goods in question. United States Supreme Court precedent makes clear that that is a fatal defect in false designation of origin and reverse palming off claims.

Second, plaintiff's false advertising, labeling and deceptive trade practice claims all share the same fatal defect. The complaint is devoid of any fact indicating that BMI has made a materially false statement of fact about the products defendants are alleged to be selling.

Third, plaintiff's tortious interference with prospective economic advantage claim is fatally defective because plaintiff nowhere pleads that defendants interfered with any of its reasonably certain business prospects.

Fourth, plaintiff also has failed to adequately plead its claim that defendants are infringing on the alleged product design trade dress of plaintiff's products (or line of products) for several reasons. Despite its repeated self-serving proclamations that its products (or line of products) are distinctive, plaintiff never sets forth what is actually distinctive about its product design trade dress or what the elements of its trade dress are. While plaintiff does identify a handful of categories of elements common to all light fixtures, plaintiff never states what its trade dress actually incorporates. Plaintiff also fails to even indicate whether it is asserting one trade dress for its entire product line or that each of its numerous light fixtures has its own distinctive trade dress. Plaintiff therefore has not satisfied its pleading burden.

Fifth, plaintiff's claim that BMI breached a confidentiality agreement fails because plaintiff has not plead what trade secrets were provided to defendant or that any defendant alleged to have received the unidentified trade secrets improperly disclosed those trade secrets.

Sixth, plaintiff's unfair competition and breach of implied covenant of good faith and fair dealing claims also should be dismissed. Not a single additional fact is alleged in support of those catch-all type claims. Because the more specific claims are deficient as a matter of law, and those catch-all claims are based on the same allegations, they should fail for the same reasons as the more specific claims.

Any remaining claims based on state law (e.g., for unjust enrichment), also should be dismissed under New York General Business Law section 1312 because plaintiff is not registered to do business in New York and therefore is prohibited from pursuing state law claims in New York state.

For those and the reasons more fully set forth below, BMI requests that the complaint be dismissed.

## STATEMENT OF FACTS[1]

According to the complaint, National is one of twenty-five or so fluorescent lighting fixture manufacturers in the United states that "market products somewhat comparable to National's." (Complaint, ¶26.) National claims that its products are in wide use in the New York tri-state area, including in "every major office building in New York City," including the Chrysler building. (Id., ¶25.)

During early 2005, defendant Bridge Metal Industries, LLC ("BMI") allegedly entered into negotiations with plaintiff concerning the possible acquisition by BMI of plaintiff's fluorescent lighting business. The complaint alleges that in July 2005, defendants Messa and Fredella, "on behalf of Bridge" signed a confidentiality agreement. The confidentiality agreement, attached to the complaint as exhibit A, prohibited BMI from *disclosing* any confidential information provided to it by plaintiff to any persons other than those necessary for the purposes of the agreement. (Id., ¶28, 34, Ex A. at ¶1) According to the complaint, the purpose of the agreement was "for the purpose of [the Bridge Defendants][2] manufacturing National's products." (Id., ¶20) The confidentiality agreement is silent regarding the *use* BMI could make of the confidential information provided to it. The confidentiality restrictions in the agreement specifically exclude any information that "was or becomes generally available to the public other than as a result of a disclosure by the Enquirers or their Representatives" (Id., Ex. A. at ¶2)

The complaint also asserts that at some time in 2005, plaintiff instructed BMI and other defendants concerning how to manufacture plaintiff's commercial light fixtures and that BMI and other defendants manufactured fixtures for National for some unspecified period of time.

---

[1] Solely for purposes of this motion to dismiss, all of the facts alleged in the complaint are assumed to be true.
[2] The complaint defines the "Bridge Defendants" as defendants BMI, Galaxy Switchgear Industries, LLC, Joseph Messa, Blaise Fredella, Isak Lemberg, and Boris Bregman.

National alleges without any further elaboration that it provided BMI and other defendants with "trade secrets comprised of confidential drawings, formulas, designs, documentation, on-hands training and seminars and other information…." (Id., ¶20.) National alleges that BMI and other defendants continued using the confidential trade secrets to manufacture light fixtures for National, even after discussions of a potential acquisition of National by BMI ended. (Id., ¶36.) Plaintiff does not allege that it ever demanded the return of its confidential information, as it was entitled to do under the confidentiality agreement.

### National's Alleged Product Design Trade Dress

Plaintiff alleges it has developed such "distinctive products" that "customers, end users and others in the lighting industry" easily recognize the trade dress of its products. (Id., ¶25) National asserts that its products can be distinguished by the following elements:

> the positioning of the fluorescent bulb, the angle at which the metal frame is curved, the placement of screws, the appearance of the inside parts, the lack of visibility of hardware, the method of wiring, the shielding design and shielding width, fixture depth and the overall color and texture combinations.
>
> [Id., ¶26]

However, plaintiff nowhere sets forth how it distinctively positions its light bulbs, or angles its frame, or wires its fixtures, nor places its screws. National also never states whether its entire product line has one distinctive trade dress or each of its products have its own trade dress.

### Allegations of Wrongdoing

Plaintiff variously asserts that all defendants engaged in a "conspiracy", that defendants are the "alter egos" of each other, and that they otherwise acted in "concert with" each other to intentionally breach the alleged confidentiality agreement between plaintiff and BMI. National asserts that all defendants are wrongfully competing with National in the "lighting specification

community" based on the confidential information provided by National to BMI and other defendants. (Id., ¶51)

Plaintiff further alleges that defendants have used the unidentified confidential information to manufacture "virtual clones" of plaintiff's commercial lighting fixtures for their own benefit. The complaint asserts that "Defendants" are "manufactur[ing] and market[ing] their own lighting fixtures" based on the trade secrets taken from plaintiff. (Id., ¶21) Defendants are alleged to be displaying the copies of National's product line in the show room of BMI and Galaxy Switchgear. (Id., ¶39) National states that because the products are "so similar" in appearance there is "a substantial likelihood the general consuming public will be confused." Defendants are alleged to be "palm[ing] off their products as identical to National's . . . ." (Id., ¶¶50-51) Based on those allegations, plaintiff seeks in excess of $30 million in damages. (Id., ¶54.)

## ARGUMENT

### I.    Plaintiff's Reverse Palming Off And False Designation Of Origin Claims Are Deficient As A Matter of Law

Plaintiff's claims that defendant BMI engaged in reverse palming off (2nd and 8th cause of action) and falsely designated the of origin of the light fixtures it is alleged to have made (4th cause of action) must be dismissed because plaintiff's allegations make clear that there is no improper designation of the origin of the goods at issue in this case. To state a claim for a Lanham Act violation based on "reverse passing off," plaintiff was required to plead that (1) plaintiff was the origin of the goods at issue, (2) the origin of the product was falsely designated by the defendant, (3) the false designation of origin was likely to cause consumer confusion, and (4) plaintiff was harmed by the defendant's false designation of origin. See, e.g., Lipton v. Nature Co., 71 F.3d 464, 473 (2d Cir. 1995); S&L Vitamins, Inc. v. Australian Gold,

Inc., 521 F.Supp.2d 188, 280 (E.D.N.Y. 2007) (setting forth four part test and explaining that "[t]ypically, reverse palming off claims arise when the alleged wrongdoer removes the creator's name and tries to pass off the product as his own.")  Similarly, to state a false designation of origin claim, Plaintiff was required to allege that defendants falsely designated who produced the goods.  See, e.g., Contractual Obligation Productions, LLC, V. AMC Networks, Inc., 2008 WL 793603 at * 9 (S.D.N.Y. March 28, 2008) (collecting cases).

The critically relevant fact for both reverse palming off and false designation of origin claims is who produced the goods at issue.  It is legally irrelevant who is alleged to have generated the ideas that have been incorporated into the goods that were produced.  As the Supreme Court made clear in Dastar Corp. v. Twentieth Century Fox Film Corp., 123 S. Ct. 2041, 2050 (2003),  that the phrase "origin of goods" under the Lanham Act "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept or communication embodied in those goods."

In this case, plaintiff claims that *defendants* are manufacturing lighting fixtures based on plaintiff's confidential ideas.  Defendants also are alleged to be marketing the light fixtures they allegedly produced as being identical to plaintiff's line of products.  But those allegations, even if true, fail to state a claim for reverse palming off or false designation of origin.  Those claims are deficient as a matter of law because the complaint alleges only that plaintiff allegedly is the author of the confidential ideas, not that plaintiff is the producer of the tangible products (or the origin of the goods) that defendants are selling.  To the contrary, the complaint alleges that defendants are the producers of the goods in question.  Thus, plaintiff's second, fourth and eighth causes of action must be rejected as a matter of law based on the Supreme Court's Dastar decision.

II. **Plaintiff's Claims Of False Advertising And Labeling And Deceptive Trade Practices Should Be Dismissed**

Plaintiff's claims (3rd, 9th, and 11th causes of action) for false advertising, labeling, and deceptive trade practices under both Federal and New York law should be dismissed because they have failed to plead, and cannot plead, a material element of each of those causes of action. To sustain each of those claims, plaintiff was required to plead that defendants made a materially false statement of fact. But no materially false fact has been, or could be, plead in this case.

To state a claim for false advertising under the Lanham Act, plaintiff must allege that the message in defendant's advertisement is false. See, e.g., Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995) (explaining that a false advertisement can be literally false as a factual matter or literally true but still likely to mislead or confuse consumers); Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P., 380 F.3d 126, 132 (2d Cir. 2004) (explaining Lanham Act claims for false advertising typically involve one party asserting a false or misleading fact concerning the nature, characteristics, or qualities of goods or services). Similarly, an essential element under New York's General Business Law for deceptive trade practices or for false advertising, is the claim that defendant's action was deceptive or misleading in a material way. See, e.g., Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25 (1995) (explaining standards for deceptive trade practices under General Business Law § 349 require materially deceptive or misleading acts); Andre Strishak & Assoc. v. Hewlett Packard Co., 752 N.Y.S.2d 400, 402 (App. Div. 2002) (explaining standards for false advertising under General Business law § 350 require materially deceptive or misleading advertisement).

Plaintiff's complaint is wholly devoid of any allegation that BMI, or any defendant for that matter, made a materially false statement in connection with the sale, marketing or advertising of light fixtures. To the contrary, plaintiff's complaint alleges that defendants are

manufacturing virtually identical products to National's product line, and then advertising to potential clients that they are manufacturing fixtures that are virtually identical to National's products: "Defendants' products are created using the very same specifications created by National and are clones of the National products" and defendants have touted to consumers that they can manufacture products identical to National's.    (Complaint, ¶48-49)

According to plaintiff, defendants are advertising precisely what they are selling, copies of National's products.  Even assuming that allegation as true for purposes of this motion, there is nothing materially false or untruthful in those allegations.  Because plaintiff has failed to plead, and cannot plead, the critical element of each of those causes of action (3, 9 and 11), they must be dismissed.

Moreover, plaintiff's state law claims (Count 9 and 11) fail for the additional reason that there is no allegation of harm to the public interest as is required under both Section 349 and Section 350 of New York's General Business Law.  See, e.g., Oswego Laborers' Local 214 Pension Fund, 85 N.Y.2d at 25 (explaining standards for deceptive trade practices under General Business Law § 349 include harm to consumers at large); Andre Strishak & Assoc., 752 N.Y.S. 2d at 402 (explaining standards for false advertising under General Business law § 350 include harm to consumers at large); Goshen v. Mutual Life Ins. Co. of NY, 98 N.Y.2d 314, 324 (2002) (explaining that the standards under General Business Law § 350, while specific to false advertising, are otherwise identical to the standards under section 349).

As Courts in this District have repeatedly explained, because sections 349 and 350 of New York's General Business Law are consumer protection statutes, a plaintiff may state a claim under those statutes only if it asserts "consumer injury or harm to the public interest."  La

Cibeles, Inc. v. Adipar, Ltd., 2000 WL 1253240 at *15 (S.D.N.Y.2000) (citing Securitron
Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264-65 (2d Cir. 1995)).

Moreover, the potential consumer confusion alleged in most trademark and trade dress
claims, as is alleged in this case, simply does not qualify as consumer injury or harm to the
public interest.  See Jaret Int'l, Inc. v. Promotion in Motion, Inc., 826 F. Supp. 69, 78 (E.D.N.Y.
1993) (explaining that most trademark and trade dress infringement claims are deemed to fall
outside the ambit of sections 349 and 350 because there normally is no harm to the general
public in such cases); Perkins School for the Blind v. Maxi-Aids, Inc., 274 F.Supp.2d 319, 327
(E.D.N.Y. 2003) (dismissing deceptive trade practices and false advertising claims under NY law
and explaining "[i]t is well-established that "trademark infringement actions alleging only
general consumer confusion do not threaten the direct harm to consumers" for purposes of
stating a claim under section 349 or 350);  Ivy Mar. Co. v. C.R. Seasons Ltd., 1998 WL 704112
at *7  (E.D.N.Y. Oct. 7, 1998) (stating that the injury to consumers or the public interest under
section 349 must be more than "the general variety of consumer confusion that is the gravaman
of such a [Lanham Act] claim").

The complaint is wholly devoid of any allegation of injury to the public, beyond the
generalized allegations of potential consumer confusion.  But, as explained, that is insufficient as
a matter of law and provides another basis for dismissing plaintiff's state law based false
advertising and deceptive trade practices claims.

**III.    Plaintiff's Tortious Interference With Prospective Business Relations Claim
Should Be Dismissed**

Plaintiff's fourteenth cause of action for tortious interference with prospective business
relations should be dismissed because the complaint is utterly devoid of any allegations that
could support finding that plaintiff had any reasonably certain business prospects that have been

interfered with by the acts of BMI (or any other defendant) or that BMI acted with malice.  In fact, there is not a single factual allegation in the complaint upon which to base plaintiff's claim of interference.

To state a claim for tortious interference with prospective economic advantage, plaintiff must set forth well pleaded facts from which this Court could conclude that plaintiff had a reasonable probability of economic advantage, that defendant interfered with that economic advantage and that defendant acted "solely out of malice" or used "wrongful means" to interfere. See, e.g., Christopher A. Vinas, CPA v. Chubb Corp., 499 F. Supp.2d 427, 434 (S.D.N.Y. 2007); Shared Comm'n Servs. of ESR, Inc. v. Goldman Sachs & Co., 803 N.Y.S.2d 512, 513 (App. Div. 2005) (explaining that plaintiff must allege that a "defendant's conduct was motivated solely by malice or to inflict injury by unlawful means, beyond mere self-interest or other economic considerations.")   "Wrongful means" is defined to include "physical violence, fraud, or misrepresentation, civil suits and criminal prosecutions, and some degree of economic pressure...." Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 191 (1980).

Simply stated, plaintiff's claim is patently deficient because plaintiff nowhere identifies any business relation with which BMI is alleged to have interfered.  Indeed, the only factual allegation in the complaint addressing any defendant's contacts with a prospective customer asserts that defendant "Lemberg, in the course of selling switchgears to electrical distributors (to some of whom National was selling specification grade lighting fixtures) solicited fixture business on a regular basis . . . ."  (Complaint, ¶ 40.)  But not even that allegation asserts that defendant Lemberg actually interfered with any of plaintiff's prospective business relations.

In addition, aside from plaintiff's conclusory mantra included at the end of nearly every count in the complaint that all defendants' conduct was "intentional, willful, wanton, malicious,

oppressive and reckless", there are absolutely no facts set forth in the complaint upon which the Court could conclude that BMI acted with malice. Plaintiff's claim is deficient for that reason as well.

Plaintiff's fourteenth cause of action is therefore deficient as a matter of law and should be dismissed.

## IV.    Plaintiff's Product Design Trade Dress Claim Should Be Dismissed

Plaintiff's claim (Count 1) that defendants are infringing on its alleged product design trade dress is deficient as a matter of law and should be dismissed. Federal trade dress law is designed to prevent confusion in the marketplace by prohibiting the unauthorized use of trade dress features whose "primary significance [is] to identify the source of the product rather than the product itself." Wal-mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 211 (2000). In this case, plaintiff seeks to obtain trade dress protection for its product design, which protection the Supreme Court has cautioned should be extremely limited. TrafFix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 29 (2001)  (explaining that "in general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying.")  Unlike in a case involving the typical trademark or trade dress of a product's packaging, in product design trade dress cases, like this one, the courts must exercise "'particular caution' when extending protection to product designs." Yurman Design, Inc.  v. PAJ, Inc., 262 F.3d 101, 114 (2d Cir. 2001). Such caution is required because of the significant risk of "creat[ing] a monopoly in the goods themselves" by improperly "granting trade dress protection to an ordinary product design." Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 380 (2d Cir. 1997).

In light of the "strong federal policy in favor of vigorously competitive markets," Landscape Forms, 113 F.3d at 379, and the Supreme Court's concern over the "misuse and

overextension of trade dress" protection especially in product design cases, <u>TrafFix Devices</u>, 532 U.S. at 29,  to state a claim for trade dress infringement, a plaintiff must articulate "the specific elements which comprise its distinct dress," and "a precise expression of the character and scope of the claimed trade dress."  <u>Landscape Forms</u>, 113 F.3d at 381.  As the Second Circuit has explained, such details must be provided because

> [w]ithout such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market.... Moreover, a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme or idea.
>
> [<u>Landscape Forms</u>, 113 F.3d at 381.]

Where, as here, a plaintiff fails to provide sufficient specificity concerning the precise elements of its trade dress, the complaint should be dismissed.  <u>Yurman Designs</u>, 262 F.3d at 114 (explaining that requiring "the identification of design elements that compose the asserted trade dress will thus assist in winnowing out claims that are overbroad as a matter of law"); <u>Shevy Custom Wigs, Inc. v. Aggie Wigs</u>, 2006 WL 3335008 at *5 (E.D.N.Y. Nov. 17, 2006) (dismissing trade dress claim because generalized descriptions of categories of elements of trade dress failed to provide defendant with fair notice); <u>Morris v. Buffalo Chips Bootery, Inc.</u>, 160 F. Supp. 2d 718, 721 (S.D.N.Y. 2001) (holding that "plaintiff has failed to identify with any reasonable specificity any such original elements of her designs, and this by itself defeats her Lanham Act claim").

Plaintiff's amended complaint wholly fails to identify what is its trade dress.  Instead, plaintiff broadly proclaims that its "products' trade dress" is "distinctive" because they contain the following elements:

the positioning of the fluorescent bulb, the angle at which the metal frame is curved, the placement of screws, the appearance of the inside parts, the lack of visibility of hardware, the method of wiring, the shielding design and shielding width, fixture depth and the overall color and texture combinations.

[Complaint, ¶26]

But after identifying that laundry list of generic elements, plaintiff no where identifies what about those elements common to any light fixtures is distincitive in its products. For example, every light fixture is wired in some method and has a bulb positioned in it. But plaintiff no where states what is distinctive about its method of wiring or the position of its bulbs. Plaintiff nowhere states what colors or textures make its color and texture combinations distinct. Plaintiff never states what is distinctive about the appearance of the inside parts nor about its shield design. No matter how many times one reads the complaint, it is impossible to determine what is so distinctive about the design of plaintiff's products that they should be entitled to Federal trade dress protection – a protection that the Supreme Court has made clear should be granted sparingly. Traffic Devices, Inc., 532 U.S. at 29 (explaining that absent "a patent or copyright" usually "there is no protection against copying goods and products.")

Moreover, plaintiff never even states whether there is one trade dress for the "National Product Line" or whether each type of lighting fixture in its product line has its own trade dress. To the extent plaintiff is claiming a trade dress across its entire product line, plaintiff was required to plead what is the "overall look which is consistent throughout the line." Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co., 292 F.Supp.2d 535, 542 (S.D.N.Y., 2003) (explaining that a plaintiff asserting trade dress protection for a product line must demonstrate that each of its products incorporates "an overall look which is consistent throughout the line"); Walt Disney Co. v. Goodtimes Home Video Corp., 830 F. Supp. 762, 766 (S.D.N.Y. 1993)

(same).   The amended complaint is utterly silent regarding what overall look allegedly is consistent throughout plaintiff's product line.

Plaintiff has therefore failed to meet its pleading burden and its trade dress claim should be dismissed.   Shevy Custom Wigs, Inc. v. Aggie Wigs, 2006 WL 3335008 at *5 (E.D.N.Y. Nov. 17, 2006) (dismissing claim and explaining plaintiff improperly failed to identify which were the distinctive features, how they were distinctive, whether there was a trade dress for a product line or a single product).

**V.    Plaintiff's Claims of Unfair Competition Claims Should Be Dismissed**

Plaintiff's claims of unfair competition (5th and 10th causes of action) should be dismissed because they are based entirely on other claims, which are legally deficient.   As demonstrated above, all of plaintiff's claims involving allegations of reverse palming off, false designation of origin, false advertising, deceptive trade practices and trade dress infringement are deficient as a matter of law.   Plaintiff asserts no other allegations in support of its unfair competition claims, and therefore those claims should be dismissed for the same reasons that the more specific claims should be dismissed.

**VI.    Plaintiff's Breach of Contract Claim Should Be Dismissed**

Plaintiff's breach of contract claim (Count 6) should be dismissed because there are no well plead facts from which the court could conclude that BMI improperly disclosed any confidential trade secret in violation of the Confidentiality Agreement.   The complaint contains only the most conclusory allegations that plaintiff provided the "Bridge Defendants" with confidential trade secrets.   Specifically, the complaint alleges that:

> "National did provide to the Bridge Defendants with trade secrets comprised of confidential drawings, formulas, designs, documentation, on-hands training and seminars, and other information ("Confidential Information")"  (Complaint, ¶20);

"National provided such [confidential] training, methodology, and design to the Bridge Defendants" (Complaint, ¶28);

"National agreed to provide the Bridge Defendants with the Confidential Information, comprised of trade secrets including but not limited to: drawings, formulas, designs, specification sheets, cut sheets, computer generated images, instructions for assembly, actual fixture samples, and hands-on training seminars." (Complaint, ¶34)

"The specification sheets were designed, created, manufactured, and published *by National* and in fact were part of the Confidential Information National provided to the Bridge Defendants…."(Complaint, ¶40 (emphasis in original))

Plaintiff also alleges that "the Bridge Defendants had conspired to and had caused Bridge to breach the Agreement and were using the Confidential Information without National's permission to manufacture, market, and sell products apparently identical to National's." (Complaint, ¶38.)

As is clear from the foregoing conclusory allegations, plaintiff has failed to plead any facts concerning the actual confidential trade secrets that were alleged to have been provided to the so-called Bridge Defendants.

There can be little doubt that the "most important consideration" in a case alleging improper disclosure of a trade secret is "whether the information was secret." Lehman v. Dow Jones & Co., Inc., 783 F.2d 285, 298 (2d Cir. 1986). Courts have routinely held that product design secrets, as alleged here, are not protectable as a matter of law once they have been publicly disclosed to the market. [3] See Hudson Hotels Corp. v. Choice Hotels Int'l, 995 F.2d 1173, 1177 (2d Cir. 1993) (finding that hotel room design concept was not a trade secret because it would be publicly disclosed once the hotel room was built, marketed and occupied), *abrogated on other grounds by* Nadel v. Play-by-Play Toys & Novelties, Inc., 208 F.3d 368 (2d Cir. 2000);

---

[3] A similar ruling in this case is particularly appropriate because not only are plaintiff's products on the market, its detailed design specification sheets, which were attached as an exhibit to the complaint, are generally available to the public through its website, www.natltg.com.

<u>Speciner v. Reynolds Metals Co.</u>, 279 F.2d 337, 337038 (2d Cir. 1960) (finding that a window design was not a trade secret where the features "were readily apparent from a casual inspection of the plaintiff's window which was available on the open market"); <u>Blank v. Pollack</u>, 916 F. Supp. 165, 175 (N.D.N.Y. 1996) (finding a window crank not to be a trade secret because it is "a device, that upon marketing and sale is open to public inspection of all of its features"); <u>Eagle Comtronics, Inc v. Pico, Inc.</u>, 453 N.Y.S.2d 470, 472 (App. Div. 1982) (finding no trade secret when "any secrecy in the design of the trap was lost when it was placed upon the market").

Similarly, the Confidentiality Agreement itself recognized that BMI could not be restrained from disclosing information that, through no fault of BMI's, was publicly disclosed. (Complaint, Ex. 1 ("Confidential information does not include information or records which (i) was or becomes generally available to the public other than as a result of a disclosure by the" defendants)

Any alleged confidentiality or trade secret in the design specifications of plaintiff's commercial fluorescent lighting has therefore been lost by plaintiff's public marketing of its designs and cannot form the basis for plaintiff's breach of contract claim.

In addition to failing to set forth any well plead facts indicating that trade secrets were actually provided to the so called Bridge Defendants, plaintiff fails to plead any breach of the confidentiality agreement.  Pursuant to the terms of the confidentiality agreement, which was clearly drafted by plaintiff, BMI was prohibited from *disclosing* confidential information it received.  Specifically, the agreement provides that "[t]he Confidential Information will be kept confidential and will not, without the prior written consent of the Company, ***be disclosed*** by [BMI] or their agents, employees or representatives . . . in any manner whatsoever, in whole or in part."  (Complaint, Ex A at ¶1)  Unlike most confidentiality agreements, the agreement prepared

by plaintiff does not contain any further provisions that restricted BMI's "use" of the confidential information.

Plaintiff asserts that it provided its unidentified confidential trade secrets to the "Bridge Defendants." Plaintiff further asserts that those same "Bridge Defendants" are "using" the confidential information to manufacture light fixtures. But plaintiff nowhere alleges that BMI or any of the "Bridge Defendants" have improperly "disclosed" any of the confidential information they received.

For some unknown reason, plaintiff did not include any use restrictions in the confidentiality agreement it drafted. This Court should not imply such material restrictions when plaintiff did not see fit to include it. Because the contract by its terms, only prohibits the unauthorized disclosure of confidential information, and BMI is not alleged to have disclosed any such information, plaintiff has failed to state a claim for breach of contract.

## VII.    **Plaintiff's Claim Of Breach Of Implied Covenant Of Good Faith Fails As A Matter Of Law**

Plaintiff's seventh cause of action for breach of the implied covenant of good faith and fair dealing should be dismissed because it is entirely duplicative of plaintiff's breach of contract claim. New York law is well settled that breach of an implied covenant of good faith and fair dealing is not recognized as a separate cause of action when it is based on the same facts as the breach of contract claim. See Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002). As Courts in this District have repeatedly held, a claim for breach of the implied covenant of good faith can survive a motion to dismiss "only if it is based on allegations different from those underlying the accompanying breach of contract claim." Siradas v. Chase Lincoln First Bank, N.A., 1999 WL 787658 at *6 (S.D.N.Y. Sept. 30, 1999); Grand Heritage Management, LLC v. Murphy, 2007 WL 3355380 (NRB) at *6 (S.D.N.Y., Nov 7, 2007) (same).

Plaintiff's seventh cause of action for breach of the implied covenant of good faith (Complaint, ¶¶ 72-73) simply "realleges and reasserts" exactly the same factual allegations as plaintiff's sixth cause of action for breach of contract (Complaint, ¶¶71-72).  Not a single new allegation is set forth in the complaint to support the alleged breach of good faith and fair dealing.  Therefore it must be dismissed because it is based on the same allegations underlying the accompanying breach of contract claim.  See Tierney v. Omnicom Group, Inc., 2007 WL 2012412 *7 (S.D.N.Y. 2007) (dismissing breach of implied covenant of good faith claim because amended complaint alleged "no additional facts, nor does it highlight or distinguish any particular facts when making this good faith and fair dealing claim.  On the contrary, it "repeats and realleges each and every allegation of the preceding paragraphs.")

## VIII.   National Is Not Qualified to Pursue Only State Law Claims

Finally, to the extent that this Court dismisses all of the federal causes of action, any remaining state law claims also should be dismissed.  National is a New Jersey corporation (Complaint, ¶4) that is not registered to do business in New York. (Certification of Sean Mack, ¶¶2-5)  Pursuant to NY General Business Law section 1312 foreign corporations that conduct business in New York without authority cannot institute legal proceedings in New York State. Specifically,

> [a] foreign corporation conducting activities in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to conduct activities in this state and it has paid the state all fees, penalties and franchise taxes, if any, for the years or parts thereof during which it conducted activities in this state without authority. This prohibition shall apply to any successor in interest of such foreign corporation.
>
> [N.Y.Bus.Corp.L. §1312(a).]

Federal courts permit unregistered foreign corporations to sue in federal courts located in New York, but only so long as there are federal claims in the lawsuit.  Once the federal claims

have been resolved, there is no federal interest in providing access to the courts, and New York's state law ban on unregistered foreign corporations maintaining legal proceedings applies.  See SD Protection, Inc. v. Del Rio, 498 F.Supp.2d 576, 581 (E.D.N.Y. 2007) (explaining that section 1312 "precludes the maintaining of an action by an unauthorized foreign corporation not only in the state courts of New York but also in the federal courts located in that state.")

Any remaining state law claims should therefore be dismissed.

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, defendant Bridge Metal Industries, LLC requests that the Court enter an order dismissing all of the claims against it, and such other and further relief as the Court deems appropriate.

**PASHMAN STEIN, P.C.**

Dated: July18, 2008

/s/ Sean Mack_____
**SEAN MACK, ESQ. (SM 2016)**
1375 Broadway
10th Floor
New York, New York 10018
(212) 995-2727

- and -

Court Plaza South
21 Main Street, Suite 100
Hackensack, New Jersey  07601
(201) 488-8200

Attorneys for Defendants,
  **BRIDGE METAL INDUSTRIES, LLC,**
  **JOSEPH MESSA and BLAISE**
  **FREDELLA**

19