UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

NATIONAL LIGHTING COMPANY, INC. a New          :
Jersey Corporation,                            :
                                               :
                        Plaintiff,             :
                                               :
            v.                                 :          Case No. 08 CV 03150
                                               :
BRIDGE METAL INDUSTRIES, LLC, a New York       :
Limited Liability Company; JOSEPH MESSA, an    :
individual; GALAXY SWITCHGEAR INDUSTRIES,      :
LLC, a New York Limited Liability Company;     :
BLAISE FREDELLA, an individual; ISAK           :
LEMBERG, an individual; BORIS BREGMAN, an      :
individual; PICASSO LIGHTING INDUSTRIES        :
LLC, a New York Limited    Liability Company;  :
INDEPENDENT LIGHTING, LLC,  a New York         :
Limited Liability Company; GREEN LIGHT         :
SOLUTIONS, LLC;  and MITCHELL                  :
BLOOMBERG, an individual,                      :
                                               :
                        Defendants.            :
-------------------------------------------------------------------X


**MEMORANDUM OF LAW OF DEFENDANTS GALAXY SWITCHGEAR
INDUSTRIES, INC., ISAK LAMBERG, BORIS BREGMAN, PICASSO LIGHTING
INDUSTRIES LLC, INDEPENDENT LIGHTING, LLC N/K/A GREEN LIGHT
SOLUTIONS, LLC AND MITCHELL BLOOMBERG IN SUPPORT OF THEIR
MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   I.   THE CLAIMS UNDER THE LANHAM ACT
       SHOULD BE DISMISSED IN THEIR ENTIRETY . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.  Standard of Review of Motions Under Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . 3

      B.  The Amended Complaint Fails to State a Claim
         For Trade Dress Infringement Under the Lanham Act . . . . . . . . . . . . . . . . . . . . . . 4

         1.  The Allegations in the Amended Complaint Fail to Establish That
            Plaintiff's Trade Dress is Distinctive as a Matter of Law. . . . . . . . . . . . . . . . . . 5

         2.  The Allegations in the Amended Complaint Fail to Establish That
            National's Trade Dress is Consistent Throughout Its Product Line . . . . . . . . . . 9

      C.  The Amended Complaint Fails to State Claims for Relief For
         Reverse Palming Off (Second Claim) or False Designation of
         Origin (Fourth Claim) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      D.  The Amended Complaint Fails To State a Claim For False
         Advertising (The Third Claim For Relief) Under The Lanham Act . . . . . . . . . . . . 13

      E.  The Amended Complaint Fails To State a Claim For Unfair
         Competition (Fifth Claim) Under The Lanham Act . . . . . . . . . . . . . . . . . . . . . . . . 14

  II.  THE SIXTH AND SEVENTH CLAIMS AGAINST THE
      GALAXY DEFENDANTS SHOULD BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . 15

      A.  Plaintiff Has Failed to Allege an Agency Relationship . . . . . . . . . . . . . . . . . . . . . 16

      B.  The Amended Complaint Fails to State a Claim
         for Breach of An Implied Covenant of Good Faith
         and Fair Dealing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

III. THE EIGHTH, NINTH, ELEVENTH AND FOURTEENTH
CLAIMS FAIL TO STATE CLAIMS FOR RELIEF UNDER
NEW YORK LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    A.  The Amended Complaint Fails to State a Claim For Reverse
       Palming Off (Eighth Claim) Under New York Law . . . . . . . . . . . . . . . . . . . . 19

    B.  The Amended Complaint Fails to State a Claim for False
       Advertising and Labeling (Ninth Claim) and Deceptive Trade
       Practices (Eleventh Claim) Under State Law . . . . . . . . . . . . . . . . . . . . . . . . . 20

    C.  The Amended Complaint Fails to State a Claim For
       Tortious Interference With Prospective Economic Relations
       (Fourteenth Claim ) Under New York Law . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV.    THE  AMENDED COMPLAINT SHOULD BE DISMISSED
      PURSUANT TO SECTION 1312 OF THE NEW YORK BUSINESS
      CORPORATION LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## CASES                                                                    Page(s)

1230 Park Avenue Associates, LLC v. Northern Source, LLC,
      48 A.D.3d 355, 852 N.Y.S.2d 92 (1st Dep't 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Bell Atlantic Corp. v. Twombly,
      _____U.S._____, 127 S.Ct. 1955, 167 L.Ed. 929 (2007) . . . . . . . . . . . . . . . . . . . . 3, 4

C.V.Starr & Co., Inc. v. Am. Int'l Group, Inc.,
      2006 WL 2671246 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cannon v. Douglas Elliman, LLC,
      2007 WL 4358456 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Cromer Finance Ltd. v. Berger,
      137 F.Supp.2d 452 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Dastar Corp. v. Twentieth Century Fox Film Corp.,
      539 U.S. 23, 123 S.Ct. 2041 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

DeFazio v. Wallis,
      500 F.Supp.2d 197 (E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Echostar DBS Corp. v. Gemstar-TV Guide Intern., Inc.,
      2007 WL 438088 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Envirosource, Inc v. Horsehead Resource Development Co., Inc.,
      1996 WL 363091 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Fragrancenet.com, Inc. v. Fragrancex.com, Inc.,
      493 F.Supp.2d 545 (E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

GTFM, Inc. v. Solid Clothing Inc.,
      215 F.Supp.2d 273 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Guard-Life Corp. v. S Parker Hardware Mfg. Corp.,
      50 N.Y.2d 183, 428 N.Y.S. 2d 628 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Hall v. EarthLink Network, Inc.,
      396 F.3d 500 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Henneberry v. Sumitomo Corp. of America,
    415 F.Supp.2d 423 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Kirch v. Liberty Media Corp.,
    449 F.3d 388 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Kramer v. Pollock-Krasner Foundation,
    890 F.Supp. 250 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Landscape Forms, Inc. v. Columbia Cascade Co.,
    113 F.3d 373 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 11

Leonard v. Israel Discount Bank of New York,
    199 F.3d 99 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Lipton v. The Nature Co.,
    71 F.3d 464 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.,
    292 F.Supp.2d 535 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

Malaco Leaf, AB v. Promotion in Motion, Inc.,
    287 F.Supp.2d 355 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Marvullo v. Gruner & Jahr AG & Co.,
    2001 WL 40772 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Merrill Lynch Interfunding, Inc v. Argenti,
    155 F.3d 113 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Minnesota Mining & Manufacturing Co. v. Graham Field, Inc.,
    1997 WL 166497 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Netherlands Shipmortgage Corp., Ltd. v. Madias,
    717 F.2d 731 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

O Zon Inc. v. Charles,
    272 F.Supp.2d 307 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Perkins School For The Blind v. Maxi-Aids, Inc.,
    274 F.Supp.2d 319 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20, 21

Rosza v. May Davis Group, Inc.,
    187 F.Supp.2d 123 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Salzman Sign Co., Inc. v. Beck,
    10 N.Y.2d 63, 176 N.E.2d 74, 217 N.Y.S.2d 55 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . 17

SD Protection, Inc. v. Del Rio,
    498 F.Supp.2d 576 (E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

Shared Comm'n Servs. of ESR, Inc. v Goldman Sachs & Co.,
    23 A.D.3d 162, 803 N.Y.S. 2d 512 (1st Dep't, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Sherwood 48 Associates v. Sony Corporation of America,
    76 Fed.Appx. 389, 2003 WL 22229422 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Shevy Custom Wigs, Inc. v. Aggie Wigs,
    2006 WL 3335008 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

Silverstein v. Penguin Putnam, Inc.,
    522 F.Supp.2d 579 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Societes Des Hotels Meridien v. Lasalle Hotel Operating Partnership, L.P.,
    380 F.3d 126 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Softel, Inc. v. Dragon Medical and Scientific Communications Inc.,
    118 F.3d 955 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Starr v. Georgeson S'holder, Inc.,
    412 F.3d 103 (2d Cir. 2005)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Tierney v. Omincom Group Inc.,
    2007 WL 2012412 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Traffix Devices, Inc. v. Marketing Displays, Inc.,
    532 U.S. 23, 121 S.Ct. 1255 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15

Tri Terminal Corp. v. CITC Industries, Inc.,
    78 A.D.2d 609, 432 N.Y.S.2d 184 (1st Dep't 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Wal-Mart Stores, Inc. v. Samara Bros., Inc.,
    529 U.S. 205, 120 S.Ct. 1339 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Yurman Design, Inc v. PAJ, Inc.,
        262 F.3d 101 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 8, 9, 10, 11


**STATUTES**

Fed. R. Civ. P. 12(b)(6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15 U.S.C. §1125(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

N.Y. Bus. Corp. Law §1312 (McKinneys 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

N.Y. Gen. Bus. Law §349 (McKinneys 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

N.Y. Gen. Bus. Law §350 (McKinneys 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

This Memorandum of Law is respectfully submitted on behalf of Defendants Galaxy Switchgear Industries, LLC ("Galaxy"), Isak Lamberg ("Lamberg"), Boris Bregman ("Bregman," together with Galaxy and Lamberg, the "Galaxy Defendants"), Picasso Lighting Industries LLC ("Picasso"),Green Light Solutions, LLC, formerly known as Independent Lighting LLC ("Green Light") and Mitchell Bloomberg ("Bloomberg," together with Picasso and Greenlight, the "Picasso Defendants"), in support of their motion (the Motion) for an order: a) pursuant to Fed. R. Civ. P. 12(b)(6) dismissing the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Eleventh and Fourteenth Claims in the First Amended Complaint (the "Amended Complaint") with prejudice and b) pursuant to the Section 1312 of the New York Business Law, dismissing the Tenth, Twelfth and Thirteenth Claims.

## PRELIMINARY STATEMENT

The Picasso Defendants and the Galaxy Defendants (collectively, the "Moving Defendants") have moved to dismiss, among others, all of Plaintiff's claims based upon alleged violations of the Lanham Act and the New York unfair competition laws, as well as claims based upon a breach of an alleged confidentiality agreement which they never signed. Even accepting all of the allegations in the Amended Complaint as true, and notwithstanding the fact that Plaintiff has already had an opportunity to amend its complaint, the allegations in the Amended Complaint still fail to state claims for relief as a matter of law, and must therefore be dismissed with prejudice.

As explained in detail below, the claims based upon alleged violations of the Lanham Act are all fatally defective because, among other things, there is no allegation in the Amended Complaint which states exactly what features make National's entire product line of commercial light fixtures 'distinctive' under the meaning of the Lanham Act. The cases are clear:  the failure

and inability to allege such "distinctive" features mandates dismissal of the Lanham Act and related state law claims.

In addition, Plaintiff's claims for reverse palming off and false designation of origin are similarly unavailing. Pursuant to well settled law, the 'origin' of a product under the Lanham Act is the place where the product is manufactured. Plaintiff concedes that the fixtures sold by Galaxy and Picasso are actually manufactured by them, thus eliminating any possible claim that such defendants misidentified the 'origin' of its light fixtures, whether through a 'reverse palming off' theory or otherwise. Accordingly, these claims must be dismissed.

With respect to Plaintiff's claim against the Galaxy Defendants, for an alleged breach of contract and breach of the covenant of good faith and fair dealing, it is indisputable that none of the Galaxy Defendants signed the agreement annexed to the Amended Complaint. Furthermore, although Plaintiff makes numerous vague and conclusory allegations about how each of the defendants 'acted for each other,' there is not a single allegation in the Amended Complaint to support the theory that Defendant Bridge Metal Industries, LLC, ("Bridge"), the only party that appears to have actually signed the agreement, had either actual or apparent authority to bind the Galaxy Defendants to the terms of the alleged confidentiality agreement. Accordingly, under New York law, the Amended Complaint fails to state a claim against the Galaxy Defendants for breach of contract or a breach of a duty of good faith and fair dealing.

Finally, even if some of Plaintiff's claims under New York law survive this Motion, in the event that the Lanham Act claims are dismissed, Plaintiff, who is not authorized to transact business in New York State, is precluded from maintaining this action pursuant to New York Business Corporation Law Section 1312. Plaintiff's claims must be dismissed for this reason as well.

2

As explained in detail below, Plaintiff's claims suffer from a multitude of legal deficiencies, which compel the granting of the Motion in its entirety.

## ARGUMENT

### I.

### THE CLAIMS UNDER THE LANHAM ACT
### SHOULD BE DISMISSED IN THEIR ENTIRETY

The First through Fifth Claims all seek damages for alleged violations of the Lanham Act, codified at 15 U.S.C. §1125(a). For the reasons set forth below, the claims under the Lanham Act are legally deficient and should be dismissed.

**A.    Standard of Review of Motions Under Fed. R. Civ. P. 12(b)(6)**

"In deciding a motion to dismiss under Rule 12(b)(6), the Court must 'accept all of the [party's] factual allegations in the [pleading] as true and draw inferences from those allegations in the light most favorable to [such party]." DeFazio v. Wallis, 500 F.Supp.2d 197, 202 (E.D.N.Y. 2007) (citing Starr v. Georgeson S'holder, Inc., 412 F.3d 103, 109 (2d Cir. 2005)). "[A] district court must confine its consideration to facts stated on the face of the complaint in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard v. Israel Discount Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999) (citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, _____U.S. _____, 127 S.Ct. 1955, 1964-65, 167 L.Ed. 929 (2007) (internal citations omitted). Rather, "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965. The Plaintiff must allege "enough facts to state a claim for relief

that is plausible on it face" and if the Plaintiff "ha[s] not nudged its claims across the line from conceivable to plausible, [the] complaint must be dismissed." Id. at 1974.

At bar, even accepting all of the factual allegations in the Amended Complaint as true for the purposes of the Motion, the allegations fall far short of stating any claim that is 'plausible on its face.' Id.

**B.    The Amended Complaint Fails to State a Claim
For Trade Dress Infringement Under the Lanham Act**

The First Claim seeks damages for an alleged infringement of the Plaintiff's trade dress, in violation of §43(a) of the Lanham Act, codified at 15 U.S.C. §1125(a).  Section 1125(a) provides, in pertinent part, as follows:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A)    is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B)    in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> Shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Section "43(a) ha[s] been construed to embrace not just source-identifying word marks, such as 'Nike,' and symbol marks, such as Nike's 'swoosh' symbol, but also 'trade dress.' Trade dress originally included only the packaging, or 'dressing,' of a product, but it has been expanded to encompass what is at issue in this case; the design or configuration of the product itself." Yurman Design, Inc v. PAJ, Inc., 262 F.3d 101, 114 (2d Cir. 2001) (internal citations

omitted). "In any action under §43(a) [of the Lanham Act], the plaintiff must prove (1) that the mark is distinctive as to the source of the good, and (2) that there is a likelihood of confusion between its good and the defendant's." Id., at 115.

1.    **The Allegations in the Amended Complaint Fail to Establish That Plaintiff's Trade Dress is Distinctive as a Matter of Law.**

"In evaluating the distinctiveness of a mark under [the Lanham Act], courts have held that a mark can be distinctive in one of two ways. First, a mark is inherently distinctive if "'its intrinsic nature serves to identify a particular source.'" Wal-Mart Stores, Inc. v. Samara Bros., Inc. 529 U.S. 205, 210, 120 S.Ct. 1339, 1343 (2000) (citations omitted). Second, a mark has acquired distinctiveness, even if it is not inherently distinctive, if it has developed secondary meaning, which occurs when, "in the minds of the public, the primary significance of a mark is to identify the source of the product rather that the product itself." Id., 529 U.S. at 211 (citations omitted). However, because "product design almost invariably serves purposes other than source identification," Traffix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 29, 121 S.Ct. 1255, 1260 (2001) (citations omitted), "in the case of product design . . . consumer predisposition to equate the feature with the source does not exist. Consumers are aware of the reality that, almost invariably, even the most unusual of product designs - such as a cocktail shaker shaped like a penguin – is intended not to identify the source, but to render the product itself more useful or appealing." Wal-Mart Stores v. Samara Bros., 529 U.S. at 213.

For this reason, product design can never be inherently distinctive, and "in an action for infringement of unregistered trade dress under §43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning." Id., 529 U.S. at 1346. Furthermore, "even where the plaintiff can demonstrate acquired distinctiveness, a trade dress that seeks to protect an idea, a concept, or a generalized type of appearance is generic, not

distinctive, and therefore not subject to trade dress protection." <u>Maharishi Hardy Blechman Ltd.</u>
<u>v. Abercrombie & Fitch Co.</u>, 292 F.Supp.2d 535, 542 (S.D.N.Y. 2003) (citations omitted).  This
is because "[e]xtending trade dress to generic features would undermine restrictions in copyright
and patent law that are designed to avoid monopolization of products and ideas." <u>Id.</u> (citations
omitted).

       Most importantly, a plaintiff seeking to protect its trade dress "must articulate the design
elements that compose the trade dress." <u>Yurman</u>, 262 F.3d at 116.  The "focus on the overall
look of a product does not permit a plaintiff to dispense with an articulation of the specific
elements which comprise its trade dress." <u>Landscape Forms, Inc. v. Columbia Cascade Co.</u>, 113
F.3d 373, 381 (2d Cir. 1997).   "The identification of design elements that compose the asserted
trade dress will thus assist in winnowing out claims that are overbroad as a matter of law."
<u>Yurman</u>, 262 F.3d at 117 (reversing district court and granting motion for judgment dismissing
claim for infringement of alleged trade dress, where plaintiff's "inability to articulate its trade
dress at a lower level of generality," together with its concession that the "pieces are composed
exclusively of elements commonly used in the jewelry industry . . . suggest[ed] that the dress
should be regarded as unprotectible or 'generic' to avoid tying up a product or marketing
idea.")(citations omitted); <u>See</u> <u>Sherwood 48 Associates v. Sony Corporation of America</u>, 76
Fed.Appx. 389, 391, 2003 WL 22229422, *2 (2d Cir. 2003) (affirming dismissal of Lanham Act
claim where plaintiffs "ha[d] not identified their purportedly protectable trade dress with
precision" and "this basic defect in the [Plaintiff's] pleadings, *i.e.*, the vague and overbroad
articulation of trade dress elements in the Amended Complaint, [could] not be cured. . . .");
<u>Shevy Custom Wigs, Inc. v. Aggie Wigs</u>, 2006 WL 3335008, *5 (E.D.N.Y. 2006) (dismissing
Lanham Act claim where the generality of the alleged distinctive features "are legally

insufficient. The issue is not just *which* features are distinctive, but also *how* they are distinctive.")[1]; O Zon Inc. v. Charles, 272 F.Supp.2d 307, 313 (S.D.N.Y. 2003) (dismissing claim for infringement of trade dress, where, among other things, although "plaintiffs repeatedly note [plaintiff]'s 'distinctive interior and graphics designs,' they never allege what makes its restaurant so distinctive.").

At bar, Plaintiff has utterly failed to articulate the specific elements of its alleged product design trade dress which makes its commercial lighting fixtures 'distinctive' and provides nothing other than the kind of sweeping descriptions that have been repeatedly rejected by the courts. The allegations in the Amended Complaint upon which Plaintiff relies to show 'distinctiveness' under the Lanham Act, are as follows:

- "The National products, however, are distinctive from those manufactured by any of the other lighting manufacturers it considers its competitors. National's products' trade dress is visibly different from other manufacturers and consists of the following non-functional elements: the positioning of the fluorescent bulb, the distribution of light from the bulb, the angle at which the metal frame is curved, the placements of screws, the appearance of the inside parts, the lack of visibility of hardware, the method of wiring, the shielding design and shielding width, fixture depth, and the overall color and texture combinations." (Amended Complaint, ¶ 26)

- "National has developed a trade dress with a total image so distinct that a quick examination of these factors will cause its customers, potential customers and those involved in the selection and purchasing of lighting fixtures for commercial use to instantly recognize the origin of its product as National's. . . " (Amended Complaint, ¶ 27)

- "National's efforts have culminated in a distinctive non-functional trade dress that carries secondary meaning, as its longstanding consumers associate its products with only one manufacturer." (Amended Complaint, ¶ 30)

_____

[1] In Shevy Custom Wigs, the pleading was deficient as a matter of law based upon the following findings: "[t]he phrase 'specific lace band' or 'particular multidirectional part' fail to describe what features make the lace band or multidirectional part unique. Similarly, Shevy's other sweeping 'descriptions' ('the wefted stretch net,' 'the layered style') in fact denotes categories of features, not the features themselves." Id. at *5.

As a matter of law, these allegations completely lack the requisite specificity required to sufficiently assert a claim that National's trade dress is distinctive and therefore protectible under the Lanham Act. The only allegations that pay lip service to the specificity requirements are contained in paragraph 26 of the Amended Complaint, but even those allegations fail to specify exactly what constitutes the alleged trade dress of National and what makes *National's* products distinctive from those of any other manufacturer's products. It is impossible to even begin to consider whether the alleged trade dress of National's entire product line is 'distinctive' and therefore deserving of protection under the Lanham Act. See e.g., Yurman, supra. "These allegations are legally insufficient [because] the issue is not just *which* features are distinctive, but *how* they are distinctive. Shevy Custom Wigs, 2006 WL 3335008 at * 5.

For example, although the allegations in the Amended Complaint allege a distinctive "placement of screws", "angle at which metal frame is curved" and "shielding design and shielding width" (Complaint ¶ 26), these same words could be used to describe any fixture: every lighting fixture has a "placement of screws", an "angle at which the metal frame is curved" and a "shielding design and shielding width." The issue is what makes *National's* entire product line distinctive: Where is the placement of screws? What is the angle at which the metal frame is curved? What is the shielding design and width which makes National's products distinctive from all other manufacturers? The Amended Complaint utterly fails to specify the specific elements of *National's* fixtures that are allegedly distinctive, even though Plaintiff has already had an opportunity to correct these fatal flaws.

"Without such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market. Courts will be unable to shape narrowly tailored

relief if they do not know what distinctive combination of ingredients deserves protection. Moreover, a plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, i.e., that claimant seeks protection for an unprotectable style, theme or idea." Landscape Forms , Inc., 113 F.3d at 381.

Accordingly, because the Amended Complaint utterly fails to identify and allege how the specific elements of Plaintiff's alleged trade dress are distinctive, Plaintiff has failed to state a claim for relief under the Lanham Act as a matter of law. For this reason alone, the First Claim should be dismissed with prejudice in its entirety.

### 2. The Allegations in the Amended Complaint Fail to Establish That National's Trade Dress is Consistent Throughout Its Product Line

"[A] trade dress plaintiff seeking to protect a series or line of products faces the particularly difficult challenge of showing that the appearance of its several products is sufficiently distinct and unique to merit protection as a recognizable trade dress." Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 380 (2d Cir. 1997). Accordingly, "where as here, the plaintiff seeks trade dress protection for an entire product line, as opposed to singular products, the plaintiff must demonstrate that the trade dress signifies an overall look which is consistent throughout the line." Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co., 292 F.Supp.2d 535, 543 (S.D.N.Y. 2003) (citations omitted). "In sum . . . a plaintiff asserting that a trade dress protects an entire line of different products must articulate the specific common elements sought to be protected." Yurman Design, Inc v. PAJ, Inc., 262 F.3d 101, 118 (2d Cir. 2001).

Plaintiff repeatedly refers to its "product line" in the Amended Complaint:

- "Defendants had created National-like fixtures, virtual clones of the *National product line* . . .(Amended Complaint ¶39) (emphasis supplied).

- "'Bloomberg Entities' were formed to . . . handle the marketing of the lighting fixtures cloned from the *National Product line*." (Amended Complaint ¶41) (emphasis supplied).

In addition, in its prayer for relief in the Amended Complaint, Plaintiff seeks to enjoin Defendants from manufacturing "any lighting fixture" not originating with National which might cause confusion or dilution, or sell or pass off "any products as and for products produced by National." (Amended Complaint, p.26). The relief requested, especially in light of the generic and non-specific factual allegations, is ridiculously overbroad. The Amended Complaint seeks a judgment enjoining Defendants from:

- "Manufacturing, creating, designing, marketing, selling, advertising producing, making, or otherwise using in any manner any lighting fixture not originating with National, that is likely to cause confusion, deception, or mistake or that dilutes or is likely to dilute the distinctive quality thereof;"

- "Passing off, inducing, or otherwise enabling others to sell or pass off *any products as and for products produced by National*, not Defendants' or not produced under the control and supervision of National and approved by National for sale as National's."

- "Engaging in any conduct that tends to falsely represent, or is likely to confuse, mislead, or deceive purchasers, Defendants' customers, National's customers, and other members of the public to believe that Defendants' products are connected with National or are sponsored, approved, or licensed by National, or are in any way connected or affiliated with National."

(Amended Complaint, pp.26-27) (emphasis added).

Not only has Plaintiff failed to articulate the specific elements of its trade dress with respect to any *single* fixture manufactured by Plaintiff (see pp 5-9 above), but Plaintiff has not even attempted to articulate those "specific common elements sought to be protected" throughout *its entire product line* of fixtures for which Plaintiff seeks protection. See <u>Yurman</u>, <u>supra</u>. Based

purely on Plaintiff's own allegations, it is obvious that "its definition of trade dress is altogether too broad to be a protectable source identifying expression." GTFM, Inc. v. Solid Clothing Inc., 215 F.Supp.2d 273, 299 (S.D.N.Y. 2002) (citations omitted) (plaintiff fails to establish claims of infringement of trade dress of clothing line where plaintiff "failed to articulate the specific common elements of its baseball jersey and football jersey trade dress for which it seeks protection.").

Simply stated, because Plaintiff has failed to satisfy the heightened standard required by a plaintiff seeking protection for an entire line of products, See, Yurman, supra; Landscape Forms, supra. Plaintiff's First Claim should be dismissed in its entirety with prejudice.

**C.     The Amended Complaint Fails to State Claims for Relief For Reverse Palming Off (Second Claim) or False Designation of Origin (Fourth Claim)**

"Reverse palming off under the Lanham Act occurs, simply stated, when 'A sells B's product under A's name. [citations omitted]. Specifically, a reverse palming off claim requires allegations: '(1) that the product at issue originated with the plaintiff; (2) that [the] origin of the [product] was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendants false designation of origin." Societes Des Hotels Meridien v. Lasalle Hotel Operating Partnership, L.P., 380 F.3d 126, 131 (2d Cir. 2004); see also, Softel, Inc. v. Dragon Medical and Scientific Communications Inc., 118 F.3d 955, 970 (2d Cir. 1997). As explained below, Plaintiff has not, and cannot allege that the "product at issue originated with the plaintiff."

In determining whether the product at issue originated with the plaintiff, "the term 'origin' refers not only to geographic origin but also to the origin of manufacture." Silverstein v. Penguin Putnam, Inc., 522 F.Supp.2d 579, 601 (S.D.N.Y. 2007). "Indeed, cases involving a claim for reverse palming off generally entail the defendant removing the plaintiff's trademark

and replacing it with the defendant's own mark." <u>Perkins School For The Blind v. Maxi-Aids,</u> <u>Inc.,</u> 274 F.Supp.2d 319, 324 (E.D.N.Y. 2003) (dismissing claim for reverse palming off where "the complaint is devoid of any allegations tending to establish that the defendants misidentified the [products] and tried to pass off the [products] under their own name instead of the plaintiff's name."). "In other words, the author of ideas that are reproduced in tangible products such as films and books is not the 'origin of goods' within the meaning of the Lanham Act." <u>Silverstein,</u> 522 F.Supp.2d at 601.

The Supreme Court has recently held that "in reading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were *not* designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept or communication embodied in those goods." <u>Dastar Corp.</u> <u>v. Twentieth Century Fox Film Corp.,</u> 539 U.S. 23, 37, 123 S.Ct. 2041, 2050 (2003).

The Amended Complaint does not contain a single allegation that the tangible goods offered for sale - the light fixtures sold by any of the moving defendants - were manufactured by, and therefore originated with, Plaintiff. To the contrary, the allegations concede that Defendants manufactured the light fixtures which were sold by Galaxy and Picasso. Specifically, the Amended Complaint alleges that:

- "Defendants had created National-like fixtures, virtual clones of the National product line, which were being marketed to the public in Defendants' showroom." (Amended Complaint, ¶39);

- "Lemberg proclaimed to National's President that Defendants were now in the business of manufacturing and selling to National's customers. . . ." (Amended Complaint ¶40);

- "Defendants could and would manufacture lighting fixtures identical to those set forth in the specification sheets." (Amended Complaint ¶40);

12

- Defendants advised potential clients that they "could manufacture fixtures just like National's for a less expensive price." (Amended Complaint ¶40);

- "Defendants products are created using the very same specifications created by National and are clones of the National products. . . . Defendants have sold fixtures based on National's specifications, *palming them off as their own.*" (Amended Complaint ¶49) (emphasis supplied); and

- "Defendants products are . . . similar in appearance to National's.'" (Amended Complaint ¶49).

Plaintiff therefore concedes that Galaxy is the "producer of the tangible goods that are offered for sale" Dastar, supra. Accordingly, the facts alleged in the Amended Complaint, even if proven true, cannot establish that the tangible products at issue *originated* with Plaintiff. Rather, at best, the allegations can only establish that the lighting fixtures originated with Defendants. Accordingly, the allegations fail to state a claim for reverse palming off under the Lanham Act.

For all foregoing reasons, the Second Claim for reverse palming off and the Fourth Claim predicated upon false designation of origin should be dismissed with prejudice in their entirety.

**D.    The Amended Complaint Fails To State a Claim For False Advertising (The Third Claim For Relief) Under The Lanham Act**

"To establish an actionable false advertising claim pursuant to §43(a) of the Lanham Act a plaintiff must show the advertisement is either (1) literally false or (2) although literally true, 'likely to deceive or confuse customers.'" Malaco Leaf, AB v. Promotion in Motion, Inc., 287 F.Supp.2d 355, 378 (S.D.N.Y. 2003), citing Lipton v. The Nature Co., 71 F.3d 464, 474 (2d Cir. 1995). "Additionally, in the Second Circuit a plaintiff must also show that the defendants misrepresented an inherent quality or characteristic of the product." Malaco Leaf, 287 F.Supp.2d at 378 (citations omitted). Lastly, "[i]t is axiomatic that 'subjective claims about products, which

cannot be proven either true or false, are not actionable under the Lanham Act' as mere 'puffing'. Id., citing Lipton, 71 F.3d at 474.

At bar, the Amended Complaint is utterly devoid of any allegation concerning any 'false advertisements' or false statements of any kind made by any of the Moving Defendants. Indeed, the only place the word "false" appears in the Amended Complaint is the naked allegation that Defendants "falsely advertise and deceptively palm off their products so as to confuse and deceive the public about the true origin of the fixtures." (Amended Complaint ¶52). Plaintiff fails to allege any specific statements or advertisements that are allegedly false. Indeed, it is impossible to tell from the Amended Complaint what alleged statements the false advertising claim is predicated upon, let alone what "inherent quality or characteristic of the product," Malaco Leaf, supra, was allegedly misrepresented by Defendants. Simply stated, Plaintiff has failed to state a claim for false advertising under the Lanham Act, warranting dismissal of the Fourth Claim with prejudice.

**E.    The Amended Complaint Fails To State a Claim For Unfair Competition (Fifth Claim) Under The Lanham Act**

As with Plaintiff's claim based upon 'false advertising' under the Lanham Act, Plaintiff's Fifth Claim, which is based upon an unexplained theory of 'unfair competition', is equally unavailing. As demonstrated above, as a matter of law, each of Plaintiff's First through Fourth Claims fail to state a claim for relief under the Lanham Act. Plaintiff's Fifth Claim, which only repeats and re-alleges each of the allegations which form the basis (or fail to form the basis) for the other claims, does not add any allegations which, if proven true, would entitle Plaintiff to relief under the Lanham Act. Accordingly, the Fifth Claim should be dismissed with prejudice as well.

In sum, the Supreme Court has been "careful to caution against misuse or overextension of trade dress . . . [noting] that product design invariably serves purposes other than source identification. Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products. In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying." Traffix Devices, 532 U.S. at 29. It is readily apparent here that notwithstanding the opportunity to cure all legal deficiencies and amend the complaint, the Amended Complaint still fails to state claims for relief under the Lanham Act. Rather, the allegations clearly establish that this is one of those instance in which "there is no prohibition against copying goods and products," Id., and not one for which Lanham Act protection may be afforded. The First through Fifth Claims should be dismissed.

## II.

### THE SIXTH AND SEVENTH CLAIMS AGAINST THE GALAXY DEFENDANTS SHOULD BE DISMISSED

The Sixth and Seventh Claims seek relief for an alleged "breach of contract" and "breach of implied covenant of good faith and fair dealing" against the Galaxy Defendants and against defendants Bridge, Joseph Messa and Blaise Fredella. However, none of the Galaxy Defendants are even parties to the contract which Plaintiff alleges was breached. In fact, the agreement is neither addressed to any of the Galaxy Defendants nor is there even a signature line for them. The Amended Complaint contains no allegation that any of the Galaxy Defendants were parties to the contract. Instead, Plaintiff baldy alleges that "Bridge signed the Confidentiality Agreement on behalf of itself and, acting as Galaxy's agent, alter ego, and otherwise controlling entity on behalf of Galaxy." (Amended Complaint ¶33). The only allegation in the Amended Complaint in support of this conclusory allegation is the allegation that "Mesa and Fredella

clearly conducted themselves at those meetings as Galaxy's decisionmakers." (Amended

Complaint ¶33). As explained below, even accepting these allegations as true for the purposes of

the Motion, Plaintiff has failed to state claims against the Galaxy Defendants for breach of

contract or breach of the covenant of good faith and fair dealing.

A.    **Plaintiff Has Failed to Allege an Agency Relationship**

It is well settled under New York law that "[a]n agent must have authority, whether

apparent, actual or implied, to bind his principal." Merrill Lynch Interfunding, Inc v. Argenti,

155 F.3d 113, 122 (2d Cir. 1998). "Actual authority arises from a manifestation from principal

to agent. The consent for actual authority may be either express or implied from the parties

words and conduct as construed in light of the surrounding circumstances." Cromer Finance Ltd.

v. Berger, 137 F.Supp.2d 452, 486 (S.D.N.Y. 2001) (internal citations omitted). "Apparent

authority must be based upon *words or conduct of the principal*, communicated to a third party,

that give rise to the appearance and belief that the agent possesses authority to enter into a

transaction; an agent cannot, through his own acts, cloak himself with apparent authority." 1230

Park Avenue Associates, LLC v. Northern Source, LLC, 48 A.D.3d 355, 355-356, 852 N.Y.S.2d

92, 93 (1st Dep't 2008). (emphasis added).

Plaintiff has not alleged any "manifestation" by the Galaxy Defendants to establish that

Bridge had *actual* authority from any of them to execute the alleged contract referred to in the

Sixth Claim. Cromer Finance Ltd., supra. Rather, Plaintiff alleges only that Bridge had

*apparent* authority from Galaxy because "Mesa and Fredella clearly conducted themselves at

those meetings as Galaxy's decisionmakers. Bregman and Lemberg acquiesced to these

discussions." (Amended Complaint ¶33). Significantly, Plaintiff fails to allege any

communications between any of the Galaxy Defendants and Plaintiff which gave rise to the

appearance that Bridge had the authority to bind the Galaxy Defendants as their agent in this transaction. "These allegations are deficient because none of them constitute representations or conduct directed by the purported principal, [namely Galaxy or the Galaxy Defendants] to a third party [Plaintiff]. In addition, those assertions run afoul of the proscription that the alleged agent with whom the third party was dealing, [i.e. Bridge], cannot cloak itself with apparent authority." Rosza v. May Davis Group, Inc., 187 F.Supp.2d 123, 130 (S.D.N.Y. 2002) (dismissing breach of contract claim where plaintiff failed to allege facts constituting apparent authority of agent to bind principal to contract); Cannon v. Douglas Elliman, LLC, 2007 WL 4358456, *5 (S.D.N.Y. 2007) (Opinion by Judge Buchwald dismissing breach of contract claim against purported principal where "complaint only contains conclusory allegations of an agency relationship . . . The complaint simply states that defendants acted 'as agents for each other' . . . but offers no facts from which inferences of actual or apparent authority in this context can be drawn.")

Moreover, there is absolutely no allegation whatsoever that Bridge signed any contract as an agent for Messrs. Bregman and Lamberg. In fact, even the so-called contract annexed to the Amended Complaint makes no mention of Messrs. Bregman and Lamberg. "[E]veryone in business knows that an individual stockholder or officer is not liable for his corporation's engagements unless he signs individually." Salzman Sign Co., Inc. v. Beck, 10 N.Y.2d 63, 67, 176 N.E.2d 74, 76, 217 N.Y.S.2d 55, 57 (1961). Thus, even if Plaintiff had successfully stated a claim against Galaxy (which it has not), the principals and/or officers of the company cannot be held liable for the contractual undertaking of their corporate entity, as there is no allegation (and indeed, no evidence) that Messrs. Bregman and Lamberg signed the alleged contract in their individual capacities.[2]

_____

[2] In fact, notwithstanding the generalized allegations asserted against Defendants Bloomberg, Bregman and Lamberg, for the reasons set forth in the moving brief of individual defendants Joseph Messa and Blaise Fredella in

17

Accordingly, as Plaintiff has failed to allege any facts from which the Court could find that there existed either an actual or apparent agency between Bridge and Galaxy, and because none of the Galaxy Defendants executed the agreement, Plaintiff has failed to state a claim for breach of contract against the Galaxy Defendants.   The Sixth Claim against these defendants should therefore be dismissed with prejudice.

**B.      The Amended Complaint Fails to State a Claim for Breach of
An Implied Covenant of Good Faith and Fair Dealing**

"An implied covenant of good faith and fair dealing is implied in every contract governed by New York law, and it precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement." Tierney v. Omincom Group Inc., 2007 WL 2012412, *7 (S.D.N.Y. 2007).  However, "if the allegations do not go beyond the statement of a mere contract breach, and in relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." Id. (dismissing claim for breach of implied covenant of good faith and fair dealing where the "Amended Complaint alleges no additional facts, nor does it highlight or distinguish any particular facts when making this good faith and fair dealing claim.  On the contrary, it 'repeats and realleges each and every allegation of the preceding paragraphs.'"). See also, Hall v. EarthLink Network, Inc., 396 F.3d 500, 508 (2d Cir. 2005).  In addition, "the implied covenant does not . . . operate to create new contractual rights." Echostar DBS Corp. v. Gemstar-TV Guide Intern., Inc., 2007 WL 438088, * 7 (S.D.N.Y. 2007). Therefore, "[p]arties cannot breach a contract's implied promise of good faith and fair dealing before the contract is entered into." Id., at *8.

---

support of their motion to dismiss the Amended Complaint, which are incorporated by reference herein, the Amended Complaint fails to state a claim for the individual liability of any of these individual defendants.

At bar, as explained above (pp. 15-17), the Galaxy Defendants are not parties to the agreement that Plaintiff alleged they breached. Accordingly, as these defendants never entered into a contract with Plaintiff, there cannot be an implied covenant of good faith and fair dealing owed by Defendants under such a contract. See Echostar, supra. For this reason alone, the Seventh Claim should be dismissed as against the Galaxy Defendants with prejudice.

In addition, in all events, the Amended Complaint does not "go beyond the statement of a mere contract breach." Tierny, supra. To the contrary, the Seventh Cause of Action simply restates and realleges all of the allegations which constitute the basis for Plaintiff's breach of contract claim. (Amended Complaint ¶¶72-73). Accordingly, even if the Galaxy Defendants were deemed to be parties to the agreement for the purposes of the Motion (which they are not), Plaintiff failed to plead any additional facts, separate from the facts alleged in support of its breach of contract claim, which would entitle it to relief for breach of an implied covenant of good faith and fair dealing. See Tierney, supra. Accordingly, for this reason as well, the Seventh Claim should be dismissed against the Galaxy Defendants with prejudice.

## III.

### THE EIGHTH, NINTH, ELEVENTH AND FOURTEENTH CLAIMS FAIL TO STATE CLAIMS FOR RELIEF UNDER NEW YORK LAW

### A.    The Amended Complaint Fails to State a Claim For Reverse Palming Off (Eighth Claim) Under New York Law

"The elements of palming off under New York common law are identical to the standards applied to Section 43(a) claims of the Lanham Act." Fragrancenet.com, Inc. v. Fragrancex.com, Inc., 493 F.Supp.2d 545, 548 (E.D.N.Y. 2007), citing Marvullo v. Gruner & Jahr AG & Co., 2001 WL 40772, *7 (S.D.N.Y. 2001). See C.V.Starr & Co., Inc. v. Am. Int'l Group, Inc., 2006 WL 2671246, *2 (S.D.N.Y. 2006).

Accordingly, for the same reasons set forth above with regard to the reverse palming off claim under the Lanham Act (pp. 11-13 above), Plaintiff's claim for 'reverse palming off' under New York law (the Eighth Claim), fails to state a claim as a matter of law and should be dismissed with prejudice.

**B.**    **The Amended Complaint Fails to State a Claim for False Advertising and Labeling (Ninth Claim) and Deceptive Trade Practices (Eleventh Claim) Under State Law**

Plaintiff has also alleged that "Defendants' conduct . . . constitutes false advertising and false labeling in violation of the general business laws of the state of New York" (Amended Complaint ¶77). These allegations refer to alleged violations of Sections 349 and 350 of the New York General Business Law, entitled, respectively, "Deceptive acts and practices unlawful" and "False Advertising Unlawful." N.Y. Gen. Bus. Law §§349, 350 (McKinneys 2008).

At the outset, under New York law "[m]ost trademark and trade dress infringement claims are deemed to fall outside the ambit of sections 349 and 350. Because sections 349 and 350 are consumer protection statutes, a plaintiff may state a claim under these statutes only if it asserts consumer injury or harm to the public interest." Perkins School for the Blind, 274 F.Supp.2d at 326-327 (citations omitted). "It is well established that trademark infringement actions alleging only general consumer confusion do not threaten the direct harm to consumers for purposes of stating a claim under section 349 or 350." Id. at 327.

The Amended Complaint does not contain any factual allegations concerning "consumer injury" or "harm to the public interest." At best, the Amended Complaint only alleges "general consumer confusion",[3] which is insufficient to sustain a claim for deceptive acts or false

---

[3] The closest the Amended Complaint comes to alleging "harm to the public interest" is the allegation that defendants "falsely advertise and deceptively palm off their products so as to confuse and deceive the public about the true origin of the fixtures." (Complaint ¶52). However, this conclusory allegation, which is nothing more than a bland recitation of an element of

20

advertisement under New York general business laws. <u>Perkins</u>, 274 F.Supp.2d at 327 (dismissing claims for deceptive trade practices and false advertising under Section 349 and 350 of the New York Business Law, "[b]ecause the Complaint fails to identify the requisite harm to consumers or the public interest . . . ."). Accordingly, Plaintiff's deceptive acts and false advertising claims alleged in the Ninth and Eleventh Claims should be dismissed in their entirety with prejudice.

**C.    The Amended Complaint Fails to State a Claim For Tortious Interference With Prospective Economic Relations (Fourteenth Claim ) Under New York Law**

"Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or the improper means; and (4) the defendants interference cause injury to the relationship." <u>Kirch v. Liberty Media Corp.</u>, 449 F.3d 388, 400 (2d Cir. 2006) (citations omitted). "The first element of this claim requires plaintiff to have had a business relationship with a third party *at the time of* defendant's interference." <u>Henneberry v. Sumitomo Corp. of America</u>, 415 F.Supp.2d 423, 468 (S.D.N.Y. 2006). Furthermore, the plaintiff "must specify some particular, existing business relationship through which plaintiff would have done business but for the alleged tortious behavior." <u>Minnesota Mining & Manufacturing Co. v. Graham Field, Inc.</u>, 1997 WL 166497, *7 (S.D.N.Y. 1997). "A general allegation of interference with customers without any sufficiently particular allegations of interference with a *specific contract or business relationship* will not withstand a motion to dismiss." <u>Envirosource, Inc v. Horsehead Resource Development Co., Inc.</u>, 1996 WL 363091, * 14 (S.D.N.Y. 1996) (citations omitted).

---

plaintiff's claim, does not contain any facts identifying the public interest or the consumer allegedly harmed by the alleged "false advertising."

Plaintiff failed to state a claim for tortious interference with prospective business relations because it has not specified any particular party or business relationship with whom defendants interfered. The only allegation in the Amended Complaint concerning the defendants' alleged interference is that "Defendants' conduct amounts to . . interference with National's Confidentiality Agreement and its prospective economic relations with existing and potential clientele"(Amended Complaint ¶52), and that "[t]he conduct of Defendants as alleged herein constitutes tortious interference with the contractual relations between National and National's existing and potential clientele." (Amended Complaint ¶87). Plaintiff's broad and general allegation of interference made without specifying the identity of any customers or specific relationships is insufficient as a matter of law. Henneberry, 415 F.Supp.2d at 469 (no claim for tortious interference with prospective economic relations where plaintiff "failed to plead adequately the first element of this claim – i.e., that he had a continuing or existing relationship with a third party with which defendant interfered."); Minnesota Mining & Manufacturing, 1997 WL 166497 at *7 (dismissing counterclaim where general allegation "that as a result of [defendant]'s actions, certain of [plaintiff]'s customers have brought their business elsewhere . . . [was] insufficient to sustain [plaintiff]'s tortious interference with prospective economic advantage. . . . ."); Kramer v. Pollock-Krasner Foundation, 890 F.Supp. 250, 258 (S.D.N.Y. 1995) (dismissing claim for tortious interference with prospective economic relations where "complaint refers generally to potential contracts with galleries and dealers that allegedly would be willing to sell [plaintiff]'s painting, and to various unnamed individuals and entities who would bid on the painting but for defendants' alleged improper conduct.").

In addition, Plaintiff has failed to allege (other than in conclusory terms) that the Moving Defendants acted "solely with malice," meaning for reasons beyond "mere self interest or other

economic considerations," <u>Shared Comm'n Servs. of ESR, Inc. v Goldman Sachs & Co.</u>, 23

A.D.3d 162, 163, 803 N.Y.S. 2d 512, 513 (1st Dep't, 2005), or acted by "wrongful means,"

<u>Guard-Life Corp. v. S Parker Hardware Mfg. Corp.</u>, 50 N.Y.2d 183,191, 428 N.Y.S. 2d 628, 633

(1980), defined to include "physical violence, fraud, or misrepresentation, civil suits and criminal

prosecutions, and some degree of economic pressure . . . ."  <u>Id</u>.

      Accordingly, Plaintiff's Fourteenth Claim should be dismissed in its entirety with

prejudice.

**IV.**

**THE  AMENDED COMPLAINT SHOULD BE DISMISSED PURSUANT TO<br>
SECTION 1312 OF THE NEW YORK BUSINESS CORPORATION LAW**

      Assuming that all of the claims under the Lanham Act are dismissed, and assuming that

some of the claims under New York law survive the motion,[4] Plaintiff nevertheless may not

proceed with the prosecution of its remaining state law claims because of its failure to satisfy the

requirement of the New York Business Corporation Law.  Section 1312 of the New York

Business Corporation Law provides, in pertinent part:

> (a) A foreign corporation conducting activities in this state without
> authority shall not maintain any action or special proceeding in this state unless
> and until such corporation has been authorized to conduct activities in this state
> and it has paid the state all fees, penalties and franchise taxes, if any, for the years
> or parts thereof during which it conducted activities in this state without authority.
> This prohibition shall apply to any successor in interest of such foreign
> corporation.

N.Y.Bus.Corp.L. §1312(a).

      "Although it is well settled that this statute does not raise a jurisdictional bar, the statute

'precludes the maintaining of an action by an unauthorized foreign corporation not only in the

---

[4] The Moving Defendants have not moved to dismiss Plaintiff's Tenth, Twelfth or Thirteenth Claims for failure to state a claim.  Instead, such claims should be dismissed for failure to comply with Section 1312 of the Business Law.

23

state courts of New York but also in the federal courts located in that state.'" <u>SD Protection, Inc.</u> <u>v. Del Rio</u>, 498 F.Supp.2d 576, 581 (E.D.N.Y. 2007), <u>citing</u> <u>Netherlands Shipmortgage Corp.,</u> <u>Ltd. v. Madias</u>, 717 F.2d 731, 735 (2d Cir. 1983). "To come within this section [of the BCL] the foreign corporation must do more than make a single contract, engage in an isolated piece of business, or an occasional undertaking; it must maintain and carry on business with some continuity of act and purpose." <u>Netherlands Shipmortgage</u>, 717 F.2d at 736.

Based upon the allegations in the Amended Complaint, Plaintiff clearly has carried on business in New York for many years with "continuity of act and purpose." Plaintiff alleges that: "Since 1941, National has manufactured high quality, architectural grade lighting fixtures for commercial, educational, hospital, governmental and other large scale facilities." (Amended Complaint ¶ 23); "A significant portion of its clientele is situated in the Northeastern United States. National's products are currently installed in most major office buildings in the New York tri-state vicinity. . . ." (Amended Complaint ¶ 24), "Its fixtures are installed in every major office building in New York City, including the iconic Chrysler and Empire State Buildings." (Amended Complaint ¶ 25), and "Defendants have entered the architectural grade lighting market in metropolitan New York, where the bulk of National's clients are located . . ." (Amended Complaint ¶ 48).

It cannot be disputed that based upon Plaintiff's business activities in New York, it is required to obtain authority to do business there or risk dismissal of this law suit pursuant to Section 1312 of the Business Corporation Law. It is equally indisputable that Plaintiff never obtained authority to conduct business in New York. See (Rosenberg Aff. ¶ 7).[5] Accordingly, unless Plaintiff obtains authority from the Secretary of State to do business in New York by

---

[5] Defendants respectfully request that the Court take judicial notice of the search performed of the records at the Secretary of State, which are public records and therefore appropriate for judicial notice.

filing the appropriate papers and paying all fees and taxes due to the State for conducting

unauthorized business in New York since 1941, the Amended Complaint should be dismissed in

its entirety.[6]

## **CONCLUSION**

For all of the foregoing reasons, the Moving Defendants respectfully request that the

Motion be granted in its entirety, and that the Court grant such other and further relief as it

deems appropriate.

Dated:     New York, New York
           July 18, 2008

                                        TODD & LEVI, LLP

                                        By: _____
                                            Jill Levi (JL 5223)
                                        444 Madison Avenue, Suite 1202
                                        New York, New York 10022
                                        (212) 308-7400
                                        Attorneys for the Galaxy Defendants and
                                        the Picasso Defendants

---

[6] New York Courts have recognized that "the more appropriate remedy is not outright dismissal of the complaint, but a conditional dismissal or stay affording plaintiff an opportunity to cure this non-jurisdictional defect." SD Protection, 498 F.Supp.2d at 581, *citing* Tri Terminal Corp. v. CITC Industries, Inc., 78 A.D.2d 609, 432 N.Y.S.2d 184, 185 (1st Dep't 1980).