UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL LIGHTING COMPANY, INC., a New Jersey Corporation, | ) Case No. 08cv03150 (NRB) |
| | ) |
| Plaintiff, | ) ECF CASE |
| | ) |
| vs. | ) |
| | ) |
| BRIDGE METAL INDUSTRIES, LLC, a New York Limited Liability Company; JOSEPH MESSA, an individual; GALAXY SWITCHGEAR INDUSTRIES, LLC, a New York Limited Liability Company; BLAISE FREDELLA, an individual; ISAK LEMBERG, an individual; BORIS BREGMAN, an individual; PICASSO LIGHTING INDUSTRIES LLC, a New York Limited Liability Company; INDEPENDENT LIGHTING, LLC, a New York Limited Liability Company; GREEN LIGHT SOLUTIONS, LLC; and MITCHELL BLOOMBERG, an individual, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**MEMORANDUM OF LAW IN OPPOSITION TO
MOTIONS TO DISMISS FILED BY
(A) GALAXY SWITCHGEAR INDUSTRIES, INC., ISAK LAMBERG, BORIS
BREGMAN, PICASSO LIGHTING INDUSTRIES LLC, INDEPENDENT
LIGHTING, LLC N/K/A GREEN LIGHT SOLUTIONS, LLC, AND MITCHELL
BLOOMBERG; (B) BRIDGE METAL INDUSTRIES, LLC; AND (C) JOSEPH
MESSA AND BLAISE FREDELLA**

## TABLE OF CONTENTS

**SECTION**                                                                    **PAGE**

TABLE OF AUTHORITIES..................................................................................iv

INTRODUCTION.............................................................................................1

ARGUMENT...................................................................................................2

I.      Defendants Failed To Comply With Procedural Requirements ..................2

II.     Applicable Legal Standards ................................................................3

        A.      Standard Of Review On Motions To Dismiss Under
                FRCP 12(b)(6)..................................................................3

        B.      The Court Should Exclude Defendants' Extrinsic
                Evidence, Or Alternatively, Convert The Motions To
                Motions For Summary Judgment............................................4

III.    National Has Pled Sufficiently Its Claim Of Trade Dress
        Infringement ...................................................................................5

        A.      National's Allegations Sufficiently Assert That Its Trade
                Dress Is Distinctive.............................................................5

        B.      National's Allegations Establish A Claim For Protection
                Of The Trade Dress Of Its Product Line..................................10

IV.     National Has Pled Sufficiently Its Federal Claims Of Reverse
        Palming Off And False Designation of Origin.....................................12

V.      National Has Pled Sufficiently Its Federal Claim of False
        Advertising.....................................................................................14

VI.     National Has Pled Sufficiently Its Claims Of Unfair Competition.............17

        A.      National Has Pled Sufficiently Its Federal Claim Of Unfair
                Competition......................................................................17

        B.      National Has Pled Sufficiently Its State Claim Of Unfair
                Competition......................................................................17

VII.    National Has Pled Sufficiently Its Claims Against All Defendants Of
Breach of Contract And Breach Of Implied Covenant Of Good Faith
And Fair Dealing...........................................................................18

    A.    National Sufficiently Alleges An Agency Relationship
And A Breach By The Galaxy Defendants...............................18

    B.    National Sufficiently Alleges A Claim Against Bridge For Breach
Of Contract...............................................................................21

    C.    National Sufficiently Alleges A Claim Against All Defendants
For Breach Of The Implied Covenant Of Good Faith
And Fair Dealing........................................................................25

VIII.    National Has Pled Sufficient Facts To Support A Finding Of Personal
Liability On The Part Of Messa And Fredella Under All Causes Of
Action Asserted Against Them.......................................................26

IX.    National Has Pled Sufficiently Its State Claim of Reverse
Palming Off ......................................................................................30

X.    National Has Pled Sufficiently Its State Claims of False
Advertising and Labeling And Deceptive Trade Practices.....................30

XI.    National Has Pled Sufficiently Its State Claim Of Tortious
Interference With Prospective Economic Relations.............................32

XII.    National Is Authorized To Bring This Action Before This Court...............33

CONCLUSION...................................................................................35

# TABLE OF AUTHORITIES

**CASES**                                                                              **PAGE(S)**

*1230 Park Associates, LLC, v. Northern Source, LLC*
852 N.Y.S.2d 92 (N.Y. App. Div. 2008)……………………………..…20

*Adipar Ltd. v. PLD Int'l Corp.*
2002 WL 31740622 (S.D.N.Y. 2002)…………………………………………20

*Allenberg Cotton Co. v. Pittman*
419 U.S. 20 (1974)……………………………………………………………34

*Ashland Management Inc. v. Janien*
624 N.E.2d 1007 (N.Y. 1993)………………………………………………22

*Bach v. Forever Living Products U.S., Inc.*
473 F. Supp.2d 1110 (W.D. Wash. 2007)……………………………………14

*Bambu Sales, Inc. v. Sultana Crackers, Inc.*
683 F. Supp. 899 (E.D.N.Y. 1988)…………………………………………26

*Beverage Marketing USA, Inc. v. South Beach Beverage Company, Inc.*
2007 WL 1187975 (N.Y. App. Div. 2007)………………………………..…18

*Bezuszka v. L.A. Models, Inc.*
2006 WL 770526 (S.D.N.Y. 2006)…………………………………………27

*Blank v. Pollack*
916 F. Supp. 165 (N.D.N.Y. 1996)…………………………………………23

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*
973 F.2d 1033 (2d Cir. 1992)………………………………………………...7

*Cannon v. Douglas Elliman, LLC*
2007 WL 4358456 (S.D.N.Y. 2007)……………………………………19, 20

*Carvel Corp. v. Diversified Management Group, Inc.*
930 F.2d 228 (2d Cir. 1991)………………………………...………....25

*Carvel Corp. v. Noonan*
350 F.3d 6 (2d Cir. 2003)…………………………………………………..32

*Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*
933 F.2d 162 (2d Cir. 1991)………………………………………………..17

*Commercial Financial Services, Inc. v. Great American Ins. Co. of New York*
381 F. Supp. 2d 291 (S.D.N.Y. 2005)..............................................19, 20

*Dastar Corp. v. Twentieth Century Fox Film Corp.*
539 U.S. 23 (2007).......................................................................14

*Dominio Media, Inc. v. Kranis*
9 F. Supp.2d 374 (S.D.N.Y. 1998)..................................................34

*Don King Productions, Inc. v. Douglas*
742 F. Supp.741 (S.D.N.Y. 1990)...................................................25

*Du Pont de Nemours Powder Co. v. Masland*
244 U.S. 100 (1917).....................................................................23

*Eagle Comtronics, Inc. v. Pico, Inc.*
453 N.Y.S.2d 470 (N.Y. App. Div. 1982)..........................................23

*Electronics Communications Corp. v. Toshiba Am. Consumer Prods. Inc.*
129 F.3d 240 (2d Cir. 1997)...........................................................28

*Exxonmobil Inter-America, Inc. v. Advanced Information Engineering
Services, Inc.*
328 F. Supp.2d 443 (S.D.N.Y. 2004)...............................................31

*Fairchild Engine & Airplane Corp. v. Cox*
50 N.Y.S.2d 643 (N.Y. App. Div. 1944)...........................................24

*Foman v. Davis*
371 U.S. 178 (1962)....................................................................2, 3

*Filner v. Shapiro*
633 F.2d 1139 (2d Cir. 1980).........................................................25

*Forschner Group, Inc. v. Arrow Trading Co.*
904 F. Supp. 1409 (S.D.N.Y. 1995)................................................17

*Fragrancenet.com, Inc. v. Fragrancex.com, Inc.*
493 F. Supp.2d 545 (E.D.N.Y. 2007)...............................................30

*Gay v. Wall*
761 F.2d 175 (4th Cir. 1985)........................................................4, 34

*Goldstein v. Siegel*
244 N.Y.S.2d 378 (N.Y. App. Div. 1963)..........................................30

*Grand Bahama Petroleum Company, Limited* v. *Asiatic Petroleum Corporation*
  550 F.2d 1320 (2d Cir. 1997)..............................................................34

*GTFM, Inc. v. Solid Clothing, Inc.*
  215 F. Supp.2d 273 (S.D.N.Y. 2002)...................................................11

*Guar. Residential Lending, Inc. v. Int'l Mortgage Center, Inc.*
  305 F. Supp.2d 846 (N.D. Ill. 2004)....................................................19

*Heyman v. Winarick, Inc.*
  325 F.2d 584 (2d Cir. 1963)........................................................21, 24

*Hoeltke v. C.M. Kemp Mfg. Co.*
  80 F.2d 912 (4th Cir. 1935)...............................................................21

*Hudson Hotels Corp. v. Choice Hotels, Int'l*
  995 F. 2d 1173 (2d Cir. 1993).............................................................23

*In re Currency Conversion Fee Antitrust Litig.*
  265 F. Supp.2d 385 (S.D.N.Y. 2003).....................................................29

*Invacare Corp. v. John Nageldinger & Son, Inc.*
  576 F. Supp.1542 (E.D.N.Y. 1984).......................................................34

*ITC Limited v. Punchgini, Inc.*
  9 N.Y.3d 467 (N.Y. 2007)..................................................................24

*Jeffrey Milstein Inc. v. Gregor, Lawlor, Roth, Inc.*
  58 F.3d 27 (2d Cir. 1995)....................................................................7

*Jenkins v. McKeithen*
  395 U.S. 411 (1969).......................................................................3, 4

*Johnson & Johnson Merck Consumer Pharmaceuticals Company*
*v. Smithkline Beecham*
  960 F.2d 294 (2d Cir. 1992)...........................................................15, 16

*Keviczky v. Lorbor*
  49 N.E.2d 146 (N.Y. 1943)..................................................................30

*Kramer v. Time Warner, Inc.*
  937 F.2d 767 (2d Cir. 1991)..........................................................4, 34

*LaLumia v. Schwartz*
  257 N.Y.S.2d 348 (N.Y. App.Div. 1965).................................................29

*Landscape Forms, Inc., v. Columbia Cascade Company*
113 F.3d 373 (2d Cir. 1997)...........................................................8, 9, 11

*Lipton v. Nature Co.*
71 F.3d 464 (2d Cir. 1997).........................................................12, 14, 15

*Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*
292 F. Supp.2d 535 (S.D.N.Y. 2003)................................................11

*Malaco Leaf, AB v. Promotion in Motion, Inc.*
287 F. Supp.2d 355 (S.D.NY. 2003)...............................................15

*Monsanto Company v. Haskel Trading, Inc.*
13 F. Supp.2d 349 (E.D.N.Y. 1998)...............................................26

*Montgomery v. Noga*
168 F.3d 1282 (11th Cir. 1999)......................................................13

*Morris v. Buffalo Chips Bootery, Inc.*
160 F. Supp.2d 718 (S.D.N.Y. 2001)................................................9

*National Assoc. of Pharmaceutical Mfrs. v. Ayerst Lab.*
850 F.2d 904 (2d Cir. 1988)...........................................................16

*Netherlands Shipmortgage Corp., Ltd. v. Madias*
717 F.2d 731 (2d Cir. 1983)...........................................................34

*Old Republic Ins. Co. v. Hansa World Cargo Service, Inc.*
51 F. Supp.2d 457 (S.D.N.Y. 1999)................................................18

*Ontario Ltd. v. Lencore Acoustics Corp.*
105 F. Supp.2d 56 (E.D.N.Y. 2000)...............................7, 10, 11, 16

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*
647 N.E.2d 741 (N.Y. 1995)..........................................................15

*Perkins School for the Blind v. Maxi-Aids, Inc.*
274 F. Supp.2d 319 (E.D.N.Y. 2003)........................................12, 30

*Phonometrics Inc. v. Hospitality Franchise Systems Inc.*
203 F.3d 790 (Fed. Cir. 2000)...................................................4, 6, 27

*Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.*
926 F.2d 134 (2d Cir. 1991).......................................................15, 16

*Rolls-Royce Motor Cars, Inc. v. Schudroff*
    929 F. Supp. 117 (S.D.N.Y. 1996)……………………………..……………………29

*Rose v. Goldman, Sachs & Co., Inc.*
    163 F. Supp.2d 238 (S.D.N.Y. 2001)……………………………………………28

*Rototron  Corp. v. Lake Shore Burial Vault Co., Inc.*
    553 F. Supp.691 (E.D. Wis. 1982)…………………….…..…………………21

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*
    748 F.2d 774 (2d Cir. 1984)……………………………………………………2

*Scheuer v. Rhodes*
    416 U.S. 232 (1974)………………………………………..……………………4

*Schreyer v. Casco Products Corp.*
    97 F. Supp. 159 (D.C. Conn. 1951)………………..………………………23

*Schreyer v. Casco Products Corp.*
    190 F.2d 921 (2d Cir. 1951)……………………………..………………………23

*SD Protection, Inc. v. Del Rio*
    498 F. Supp.2d 576 (E.D.N.Y. 2007)……………….……………………33, 34

*Shaw v. Lindheim*
    919 F.2d 1353 (9th Cir. 1990)……………………………..…………………14

*Securitron Magnalock Corp. v. Schnabolk*
    65 F.3d 256, 265 (2d Cir. 1995)………………………….…………………31

*Shevy Custom Wigs v. Aggie Wigs*
    2006 WL 3335008……………………………………………………9, 10

*Societes Des Hotels Meridien v. LaSalle Hotel Operating Partnership, L.P.*
    380 F.2d 126 (2d Cir. 2004)………………………………….……………..12

*Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.*
    118 F.3d 955 (2d Cir. 1997)………………………………………….12, 14

*Speciner v. Reynlods Metals Co.*
    279 F.2d 337 (2d Cir. 1960)…………………………………..………23

*State of New York v. Shore Realty Corp.*
    759 F.2d 1032 (2d Cir. 1985)…………………………………….…………26

*Swierkiewicz v. Sorema N.A.*
    534 U.S. 506 (2002)...................................................................4, 9, 11

*Tierney v. Omincom Group Inc.*
    2007 WL 2012412 (S.D.N.Y. 2007).................................................25

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*
    532 U.S. 23 (2001)..........................................................................9

*United States v. Jon-T Chemicals, Inc.*
    768 F.2d 686 (5th Cir. 1985)...........................................................29

*Villager Pond, Inc. v. Town of Darien*
    56 F.3d 375 (2d Cir. 1995)..............................................................18

*Vitanza v. Board of Trade of the City of New York, Inc.*
    2002 WL 424699 (S.D.N.Y. 2002)....................................................28

*Waldman Publishing Corp. v. Landoll, Inc.*
    43 F.3d 775 (2d Circ. 1994)......................................................12, 13, 14

*Walker Manufacturing, Inc. v. Hoffman, Inc.*
    261 F. Supp.2d 1054 (2003)...................................................12, 13, 14

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*
    529 U.S. 205 (2000).....................................................................6, 9

*Yurman Design, Inc. v. PAJ, Inc.*
    262 F.3d 101 (2d Cir. 2001)..............................................................8

## STATUTES / RULES

Individual Practices of the Hon. Naomi Reice Buchwald Rule 2(A)..............2, 3, 26

15 U.S.C. §1125(a) ......................................................................6, 16

Fed. R. Civ. Proc. Rule 8(a).........................................................4, 29

Fed. R. Civ. Proc. Rule 12(b)(6).......................................1, 4, 10, 21, 35

Fed. R. Civ. Proc. Rule 12(d)..........................................................1, 4

Fed. R. Civ. Proc. Rule 15(a).............................................................2

Fed. R. Civ. Proc. Rule 50(b)............................................................8

Fed. R. Civ. Proc. Rule 56………………………………………………….…4

N.Y. Bus. Corp. Law §1312 (McKinneys 2008)……………………....…4, 5, 33, 34, 35

N.Y. Bus. Corp. Law §349 (McKinneys 2008)………………………….…….…30

N.Y. Gen. Bus. Law §350 (McKinneys 2008)………………………………….………30

N.Y. Pattern Jury Instr. -- Civil 3:58 (2007)…………………………………..……18

Restatement (First) of Torts § 757 (1939)………………………………….…22, 24

Plaintiff, NATIONAL LIGHTING COMPANY, INC. ("National"), submits this memorandum of law in opposition to the three Motions to Dismiss filed by (a) Defendants GALAXY SWITCHGEAR INDUSTRIES, INC., ISAK LAMBERG, BORIS BREGMAN, PICASSO LIGHTING INDUSTRIES LLC, INDEPENDENT LIGHTING, LLC N/K/A GREEN LIGHT SOLUTIONS, LLC AND MITCHELL BLOOMBERG (the "Galaxy Defendants"); (b) Defendant BRIDGE METAL INDUSTRIES, LLC ("Bridge"); and (c) Defendants JOSEPH MESSA ("Messa") and BLAISE FREDELLA ("Fredella")[1]:

## INTRODUCTION

Defendants have moved, under Fed. R. Civ. Proc. Rule 12(b)(6), (the "Motions") all of National's claims in its First Amended Complaint (the "FAC")[2]. Defendants' Motions are procedurally and substantively deficient and should be denied. Defendants failed to comply with this Court's pre-filing and filing requirements for their Motions. Defendants additionally have introduced extrinsic evidence raising issues beyond the pleadings, potentially converting their Motions into ones for Summary Judgment pursuant to Fed. R. Civ. Proc. Rule 12(d). Defendants' Motions, however, if this Court determines to convert them to Summary Judgment motions, are premature and should be barred at this time to allow the parties a reasonable opportunity to conduct discovery and determine whether and which triable issues of material fact exist. Should the Court exclude (or include) Defendants' evidence and review the Motions as motions for dismissal, the Motions all fail for substantive reasons and should be denied.

---

[1]  National obtained permission from this Court to file one Memorandum of Law in Opposition, no more than 35 pages in length, to all of the three Motions to Dismiss filed by the named defendants. Unless otherwise noted in this Memorandum, National hereinafter refers to the Motions to Dismiss respectively as the "Galaxy Motion", the "Bridge Motion", and the "Messa/Fredella Motion." National refers collectively to all three Motions as the "Motions", and to all moving defendants collectively as the "Defendants".

[2]  Defendants Messa and Fredella, in addition to filing their own Motion to Dismiss, joined in the Bridge Motion. Any and all arguments by National in opposition to the arguments in to the Bridge Motion, therefore, also comprise National's substantive arguments to Messa's and Fredella's Joinder.

National has pled sufficiently all of its causes of action and has standing to file its claims in this Court. If the Court grants any part of Defendants' Motions to Dismiss, it should allow National leave to amend its FAC in accordance with the well-established Federal standards of liberal pleading and amendments. If the Court dismisses any of National's claims without leave to amend, National respectfully requests such claims be dismissed without prejudice.[3]

## ARGUMENT

### I.    Defendants Failed To Comply With Procedural Requirements

Rule 2(A) of the Individual Practices of the Honorable Naomi Reice Buchwald (the "Court's Individual Practices") requires the moving party to submit a letter prior to filing a motion to dismiss, setting forth the basis for the anticipated motion. Defendants did submit pre-filing letters to the Court setting forth the bases for their Motions. (See letter by Jill Levi, Counsel for Galaxy Defendants, dated May 12, 2008, marked and attached to the concurrently submitted Affidavit of Jonah A. Toleno ("Toleno Aff.") as Exhibit "A"; see also letter by Sean Mack, Counsel for Bridge, Messa and Fredella, dated May 12, 2008, marked and attached to the Toleno Aff. As Exhibit "B".)

Defendants' letters, however, fail to articulate fully the bases for their motions to dismiss. The Galaxy Defendants did not provide the bases for moving to dismiss the following causes of action (alleged in the Complaint and FAC): federal false advertising; state law claims for reverse "palming off"; false advertising and false labeling; deceptive trade practices; and tortious interference with prospective economic relations. (Toleno Aff., ¶ 10, Exh. A). Bridge, Messa and Fredella failed to provide bases for moving to dismiss these same claims. (Toleno Aff. ¶ 11, Exh. B.) Since Defendants failed to state

---

[3] While National recognizes this Court's policy of not granting leave to amend after it grants a motion to dismiss, National respectfully makes this request in light of Federal courts' consistent holdings that leave to amend under Fed. R. Civ. Proc. Rule 15(a) should be freely given in absence of reasons such as undue delay, bad faith on part of movant, and undue prejudice to opposing party. *See Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 783 (2d Cir. 1984); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (if underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits).

the bases for dismissing these claims, as required by the Court's Individual Practices, the Court should reject their motion to dismiss these claims. Should the Court dismiss any of these causes of action, however, National should be granted leave to amend in light of Defendants' failure to follow this Court's Individual Practices and the lack of opportunity for National to test its claims on the merits under *Foman, supra.*

Rule 2(D) of the Court's Individual Practices also requires that Defendants concurrently submit a letter outlining the substantive argument advanced in the motion papers, which none of them submitted. (Toleno Aff., ¶ 9.) The Court therefore should reject the Motion as procedurally deficient.

This Court's Individual Practices limits memoranda in support of motions to twenty-five (25), unless prior permission is granted. On June 17, 2008, Counsel for the Galaxy Defendants submitted a letter to this Court requesting, on behalf of all named defendants, an enlargement of their respective memoranda page limits to thirty-five (35) pages, which this Court denied. (See Court-endorsed letter by Ms. Levi dated June 17, 2008, marked and attached to the Toleno Affidavit as Exhibit "C".) Despite the Court's denial of this request, Defendants Messa and Fredella (a) joined in the Bridge Memorandum in Support of Motion to Dismiss, nineteen (19) pages in length, and (b) a separate Memorandum twelve (12) pages in length. Defendants Messa and Fredella attempt to circumvent the court's decision on their page enlargement request by submitting what is essentially a thirty-one (31)-page memorandum. Their Motion therefore should be rejected for failure to comply with this Court's Individual Practices.

## II.    Applicable Legal Standards

### A.    Standard Of Review On Motions To Dismiss Under FRCP 12(b)(6)

If the Court is inclined to review Defendants' Motions despite their procedural defects, the Court must accept as true the allegations of the FAC in considering a motion to dismiss for failure to state a claim. *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969). The Court also must construe the pleadings in the light most favorable to National, the

party opposing the motion, and resolve all doubts in National's favor. *Id.; see also Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). A complaint that meets the requirements of Fed. R. Civ. Proc. Rule 8(a)(2) need include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "such a statement simply give the defendant fair notice of what the plaintiff's claim is." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512-13 (2002)(citations omitted).

Federal Rules of Civil Procedure do not require a claimant to articulate in detail the facts upon which he bases his claim. *Phonometrics Inc. v. Hospitality Franchise Systems Inc.,* 203 F.3d 790, 794 (Fed. Cir. 2000) (citations omitted).

**B.    The Court Should Exclude Defendants' Extrinsic Evidence, Or Alternatively, Convert The Motions To Motions For Summary Judgment**

Under Fed. R. Civ. Proc. Rule 12(d), when matters outside the pleadings are submitted with a motion to dismiss for failure to state a claim under Rule 12(b)(6), 'the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985) (citations omitted). "If a district court wishes to consider additional material, Rule 12(b) requires it to treat the motion as one for summary judgment under Rule 56, giving the party opposing the motion notice and an opportunity to conduct necessary discovery and to submit pertinent material." *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir. 1991). In *Gay,* the Court ruled that granting a summary judgment motion when plaintiff "had barely begun discovery" was "wholly inappropriate". *Gay,* 761 F.2d. at 177-78. Here, there has been no discovery whatsoever.

Defendants argue that, if the Court dismisses National's federal claims, National is barred from bringing this action in this Court for failure to comply with New York Business Corporation Law § 1312. In their Affidavits, Defendants' Counsel attest that a

search of public records revealed no record of National's authority to do business in New York, of which Defendants request the Court to take judicial notice. (Affidavit of David Rosenberg ("Rosenberg Aff."), ¶ 7; Certification of Sean Mack ("Mack Cert."), ¶ 5.) The Mack Certification also attaches a copy of results of a search of public records (the "search result") with the New York Department of State (See Mack Aff., Exh. "A.")

Notwithstanding this Court's authority to take judicial notice of public records, Defendants' Counsel's Affidavits raise issues requiring briefing outside of the pleadings. For reasons set forth in Section XII, *infra*, National is exempt from the requirements of §1312 under well established principles of the Interstate Commerce Exception. Demonstration of this exception requires affidavits, testimony and possibly other discovery by National. The Court accordingly should exclude Defendants' extrinsic evidence, or in the alternative, convert the motions to motions for summary judgment.

If the Court converts the Motions to motions for summary judgment, National respectfully requests the Court to grant it an opportunity to conduct necessary discovery and to submit relevant evidence in opposition to Defendants' Motions. Granting a motion for summary judgment at this point would be premature, as the litigation is in the early pleading stages and discovery has not yet begun. To the extent the Court does not deem Defendants' Counsels Affidavits and exhibit extrinsic evidence, National hereby submits the following in opposition to all of the Defendants Motions to Dismiss.

**III.    National Has Pled Sufficiently Its Claim Of Trade Dress Infringement**

      **A.    National's Allegations Sufficiently Assert That Its Trade Dress Is Distinctive**

Defendants claim National has "utterly failed to articulate the specific elements of its product design trade dress which makes its commercial lighting fixtures 'distinctive'" and the allegations of the FAC lack the specificity required to sufficiently assert a distinctive and protectible trade dress under the Lanham Act. (See Galaxy Motion, Argument ("Galaxy Arg.") § I(B)(1); Bridge Motion, Argument ("Bridge Arg.") § IV.)

Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), provides, in part:

(1)    Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of original, false or misleading description of fact, or false or misleading representation of fact, which –

(A)    is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B)    in    commercial    advertising    or    promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

Shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

To state a claim for product design trade dress infringement under the Lanham Act, a plaintiff must show that its design's trade dress has "secondary meaning". The Supreme Court defines this as "the acquired, source-identifying meaning of a nonword mark". *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 211 (2000).

The FAC sets forth a "short and plain statement" that gives Defendants sufficient notice of its claim. *See Phonometrics, Inc.*, 203 F.3d at 794. As Defendants acknowledge, the FAC specifies several non-functional elements of National's products which National contends have acquired secondary meaning. National asserts, among other things:

"Since its inception, National has invested enormous amounts of time, money and other resources into developing distinctive products which contractors, owners, architects and lighting consultants and engineers readily associate with National…

"… National's products' trade dress is visibly different from other manufacturers and consists of the following non-functional elements: the positioning of the fluorescent bulb, the distribution of light from the bulb, the angle at which the metal frame is curved, the placements of screws, the appearance of inside parts, the lack of visibility of hardware, the method of wiring, the shielding design and shielding width, fixture depth, and the overall color and texture combinations.

"National has developed a trade dress with a total image so distinct that a quick examination of these factors will cause its customers, potential customers and those involved in the selection and purchasing of lighting fixtures for commercial use to instantly recognize the origin of its product

> as National's even though its architectural fluorescent lighting fixtures
> lack identifiable labels or markings.  So distinctive are National's
> products, in fact, that many architects and engineers in the country specify
> National's fixtures in the plans they draw up for buildings.  These
> individuals are known in the lighting industry as "specifiers" and they
> specify, when plans are drawn for any kind of renovation or construction,
> which brand of fluorescent light fixtures are to be used." (FAC ¶¶ 25-27.)

National adequately pleads that its products' trade dress is entitled to protection under §43(a) of the Lanham Act. National alleges that its products' design trade dress, as a whole, has acquired secondary meaning. (FAC ¶¶ 25-30).  There is no question that trade dress may protect the "overall look of a product." *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1042 (2d Cir. 1992). "Although each element of a trade dress individually might not be inherently distinctive, it is the combination of elements that should be the focus of the distinctiveness inquiry," *Jeffrey Milstein Inc. v. Gregor, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995).

In *Ontario Ltd. v. Lencore Acoustics Corp.*, 105 F. Supp.2d 56, 64 (E.D.N.Y. 2000), defendants allegedly promoted their products with trade dress deceptively similar to plaintiffs' as if they were indistinguishable from, or continuous with, plaintiff's product line. The *Ontario* Court held that, although there may well be issues of fact that will emerge later in this litigation concerning whether plaintiff's trade dress really is distinctive, or clothed with secondary meaning, at the pleading stage, plaintiffs sufficiently pled the requisite key elements: (i) That they held protected property interests in a line of products with a distinctive identity at least in the minds of their customers; and (ii) that defendants acted to promote confusion among these customers in part by infringing on the design and appearance of those products." *Id.*

National similarly alleges that it owns protectible, proprietary trade secrets used to create products with secondary meaning to its consumers (FAC ¶¶ 28-30), and that Defendants are acting to promote confusion among these consumers by creating identical

products based on the very trade secrets they purloined from National. (FAC ¶¶ 34-52.) Its allegations therefore establish a claim of protectible trade dress.

National also asserts that Defendants purloined National's trade secrets in violation of the Confidentiality Agreement (the "Confidentiality Agreement") alleged in the FAC and are creating lighting fixtures using designs and technical know-how National provided pursuant to the Confidentiality Agreement. (FAC ¶ 37-41.) The trade secrets National passed on to Defendants included photometric formulas; assembly instructions; manufacturing techniques and taught Defendants how to manufacture fluorescent lighting fixtures which Defendants never produced before National taught them to. National contends all of this was unique an proprietary to it. (FAC ¶¶ 34-35.) Defendants, by violating the Confidentiality Agreement, possessed at all relevant times actual and/or implied knowledge of National's distinctive trade dress and cannot claim lack of notice of National's trade dress in the face of the FAC allegations. They used National's plans to virtually duplicate National's products.

Defendants erroneously rely on *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001), and *Landscape Forms, Inc., v. Columbia Cascade Company*, 113 F.3d 373 (2d Cir. 1997), in arguing National failed to plead its trade dress sufficiently. The *Yurman* Court reviewed a motion for judgment not withstanding a verdict[4], not a motion to dismiss. *Yurman*, 262 F.3d at 108. It was not until after trial, after the plaintiff in *Yurman* had ample opportunity to complete discovery and prove its allegations through evidence, that the Court found plaintiff could not articulate a protectible trade dress. *Id.*

The plaintiff in *Landscape Forms* sought a preliminary injunction and presented an array of evidence, including percipient and expert testimony. *Landscape Forms*, 113 F.3d at 375, 381-82. The *Landscape Forms* standard of review applied to an appeal of the preliminary injunction – not to a motion to dismiss. *Id.* at 375. More significantly, the *Landscape Forms* Court focused not on whether that plaintiff articulated its trade dress

---

[4] *See* Fed. R. Civ. Proc. Rule 50(b).

elements with enough specificity, but rather whether the evidence presented was adequate to establish *secondary meaning. Id.* at 381-2.[5] Similarly, *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001), and *Morris v. Buffalo Chips Bootery, Inc.*, 160 F. Supp.2d 718 (S.D.N.Y. 2001), on which Defendants rely, were decided after the Courts considered factual evidence in reviewing a motion for summary judgment.

Defendants mischaracterize *Landscape Forms, Yurman, TrafFix Devices,* and *Morris* as a requirement for heightened pleading at the complaint phase. While *Landscape Forms* acknowledged that a plaintiff is not permitted to "dispense with an articulation of the specific elements which comprise its distinct dress" (*Id.* at 381), nothing in the aforementioned decisions indicate that this articulation is an initial pleading requirement.

National has alleged specific aspects of its trade dress and alleged secondary meaning. (FAC ¶¶ 26, 30.) National must be allowed to conduct discovery, present percipient and expert testimony, and indeed *try* its case before a Court can properly determine whether it has met the trade dress requirements in the cases Defendants cite. To require National to fully articulate every detail of every element of its trade dress at the initial pleading phase, as Defendants would have the Court do, would be contrary to the "extremely permissive" pleading requirements that a complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "such a statement simply give the defendant fair notice of what the plaintiff's claim is." *Swierkiewicz,* 534 U.S. 506 at 512-13.

Defendants argue, relying on *Shevy Custom Wigs v. Aggie Wigs*, that National's allegations are insufficient because the issue is not just *"which* features are distinctive, but also *how* they are distinctive." *Shevy Custom Wigs v. Aggie Wigs*, 2006 WL 3335008 at *5. *Shevy*, however, a partially published slip copy decision from a coordinate

---

[5] *Wal-Mart, supra,* also did not involve a motion to dismiss. *See Wal-Mart*, 529 U.S. at 205. The *Wal-Mart* decision in question was issued after the district court considered all evidence presented at jury trial. *Id.*

jurisdiction, is significantly factually distinct from the instant situation. In *Shevy*, the plaintiff did not allege that the defendant had access to plans, designs, formulas, and/or any trade secrets required to create the plaintiff's products or that the defendant was using such materials to make its products. The Court found the plaintiff's allegations did not put the defendant on fair notice of ***how defendant's design*** infringed on plaintiff's design, finding that the defendants could not "answer and prepare for trial," "without being able to affirm or deny that its product infringes upon Shevy's". *Shevy*, 2006 2L 3335008 at *5 (emphasis supplied).

Here, National claims Defendants wrongfully are using National's trade secrets and designs – ***not*** Defendants' own designs – to create lighting fixtures that are cloned "knock-offs" of National's products. National has identified various aspects of its protectible trade dress. Defendants ask questions such as "Where is the placement of screws? What is the angle at which the metal frame is curved?" (Galaxy Motion, ¶ 8.) Taking National's FAC allegations as true, however, Defendants have notice of exactly what these elements entail, as National spent nearly two years teaching them how to create these distinctive aspects of National's product and design trade dress, so as to create products with secondary meaning. When viewed in the light most favorable to National, as this Court must do under the 12(b)(6) standard of review, National's allegations of trade dress exceed the notice pleading requirements of the Federal Rules.

**B.      National's Allegations Establish A Claim For Protection Of The Trade Dress Of Its Product Line**

Defendants claim National fails to state a claim sufficiently for protection of product line trade dress. (See Galaxy Arg. § I(B)(2); Bridge Motion Arg. § IV.)  In *Ontario*, the Court found the plaintiff pled its claim sufficiently for product line trade dress infringement, where it alleged that the defendants promoted defendants' products with trade dress deceptively similar to plaintiff's, as if they were indistinguishable from,

or continuous with that plaintiff's line. *Ontario*, 105 F. Supp.2d at 64. That Court did not require plaintiff to plead every element of its product line trade dress. *Id.* It instead denied defendant's motion to dismiss on the basis that the plaintiff had alleged a proprietary interest in a line of products with a distinctive identity, at least in the mind of its customers; and defendants acted to promote confusion amongst those customers, in part by infringing on the design and appearance of that plaintiff's products. *Id.* In the same manner, National alleges that Defendants are using the trade secrets they purloined from National to create virtual clones of the National product line so as to confuse consumers. (FAC ¶¶ 31- 39). National has met federal pleading requirements and put Defendants on notice that they are infringing National's product line.

As with their analysis of National's allegations of its protectible trade dress, Defendants mistake the articulation requirements in *Landscape Forms*, *supra,* and *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp.2d 535 (S.D.N.Y. 2003), for a heightened initial pleading standard. The *Maharishi* Court made its finding on summary judgment after the parties conducted discovery. *Maharishi*, 292 F.2d at 540.  The Court in *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp.2d 273 (S.D.N.Y. 2002), cited by Defendants, similarly made its findings after a bench trial wherein it relied on numerous witness' affidavits, oral testimony, and deposition transcripts on the plaintiff's product line trade dress. *GTFM*, 215 F. Supp.2d at 280-83. The product line trade dress articulation considered by the *GTFM* Court was derived not from complaint language but from the plaintiff's interrogatory responses. *Id.*

Defendants' application of *Landscape Forms, Maharishi,* and *GTFM* cases simply is misplaced. Consistent with the "extremely permissive" notice pleading requirements of *Swierkiewicz* and other federal cases, none of these decisions construe trade dress articulation requirements as an initial pleading requirement. When presented with the opportunity, National can and will present evidence such as percipient and expert testimony to meet those requirements set forth in Defendants' cited cases. For the

time being, such requirements are premature. National has alleged sufficiently its claims for trade dress and product line trade dress infringement.

## IV.    National Has Pled Sufficiently Its Federal Claims Of Reverse Palming Off And False Designation Of Origin

Defendants argue that National has not adequately pled a claim for (a) reverse palming off, or (b), false designation of origin under the Lanham Act. (See Galaxy Arg. § 1(C); Bridge Arg. § I.) To state a federal claim for reverse palming off, a plaintiff must show: (1) the [product] at issue originated with the plaintiff; (2) [the] origin of the [product] was falsely designated by the defendant; (3) the false designation of origin was likely to cause consumer confusion; and (4) plaintiff was harmed by the defendant's false designation of origin. *Societes Des Hotels Meridien v. LaSalle Hotel Operating Partnership, L.P.*, 380 F.3d 126, 131 (2d Cir. 2004), quoting *Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.*, 118 F.3d 955, 970 (2d Cir. 1997); *see also Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775 (2d Circ. 1994), and *Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1997).

Defendants are mistaken that National cannot claim that the "product at issue originated with" National. (Galaxy Motion p.11.) In *Walker Manufacturing, Inc. v. Hoffman, Inc.*, 261 F. Supp.2d 1054 (2003), plaintiff had an actionable claim for reverse palming off and false designation of origin where it claimed defendant, in breach of an agreement, used the plaintiff's confidential, proprietary trade secrets to create and sell its own product in competition with the plaintiff. *See Walker*, 261 F. Supp.2d at 1059-60 (containing facts virtually identical to National's allegations).

While the Eastern District of New York states that reverse palming off cases "*generally* entail the defendant removing the plaintiff's trademark and replacing it with the defendant's own mark" (*see Perkins School For The Blind v. Maxi-Aids, Inc.*, 274 F. Supp.2d 319, 324 (E.D.N.Y. 2003) (emphasis supplied)), the Second Circuit has held that "bodily appropriation" of a product is not necessary to establish "origin" in reverse

palming off claims. *See Waldman Publishing Corp. v. Landoll, Inc.*, 43 F.3d 775, 784 (2d Cir. 1994). The *Waldman* Court found consumers were likely to be confused by defendant's misrepresentation as to the source of its products even though defendant's products were "substantially similar" to but not "bodily appropriations" of plaintiff's products. *Waldman*, 43 F.3d 775 at 784.

The *Walker* Court relied on *Waldman* in concluding "the design for certain components at issue originated with Walker, in the form of drawings or components, clearly marked as proprietary." *Walker*, 261 F. Supp.2d at 1070 (citations omitted). The *Walker* Court, in determining if plaintiff was harmed under the Lanham Act, found the controlling issue was whether plaintiff was "deprived of the advertising value of its name" and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product. *Id.* at 1074. Although the *Walker* defendant omitted reference to plaintiff altogether in marketing the product it allegedly copied from plaintiff, and Defendants here have claimed that they would manufacture fixtures identical to those in National's specification sheets, this is not a controlling distinction. Defendants are not revealing to the public that they are using purloined, trade-secret protected designs ***originating with National*** to create their products. Defendants therefore are causing a likelihood of confusion and depriving National of its goodwill and advertising value, which National alleges in the FAC. That National did not physically manufacture Defendants' infringing products is irrelevant under this cause of action. "The ultimate purchaser is harmed as well by the loss of knowledge of and possible deception regarding the true source of the product". *Id.* at 1071. In this case the true source of the product, under *Walker* and *Waldman*, is National and its proprietary trade secrets.

National also need not show actual consumer confusion at this stage in order to prove likelihood of confusion. *See Montgomery v. Noga*, 168 F.3d 1282, 1302 (11th Cir. 1999). Construing the facts in the light most favorable to National, National has pled a

cognizable cause of action for reverse palming off and false designation of origin under the *Walker, Softel, Lipton,* and *Waldman* cases.

Defendants cite *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2007), to support their argument. *Dastar*, however, is distinguishable. The *Dastar* Court refused to construe the definition of "origin" as used in the Lanham Act to include a claim for plagiarism, the "use of otherwise **unprotected** works and inventions without attribution." *Id.* at 36 (emphasis supplied); *see also Bach v. Forever Living Products U.S., Inc.*, 473 F. Supp.2d 1110, 1116 (W.D. Wash. 2007). The *Dastar* Court refused to extend Lanham Act protection to the "origin" where the author's copyright had expired and the claim essentially should have been brought under copyright law.

As the *Bach* Court noted, the *Dastar* plaintiffs "were attempting to use trademark law to prosecute plagiarism of their creative work." *Bach*, 473 F. Supp.2d at 1118. The *Bach* Court recognized that "[t]rademark and copyright law have fundamentally different purposes." *Bach*, 473 F. Supp.2d at 1117; *see also Id.* at 1117, quoting *Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990) (rejecting reverse passing off claim because plaintiff's claim was basically a copyright claim).

Unlike the *Dastar* plaintiffs, who sought trademark protection for their goods protectible under underlined copyright law, National seeks to prohibit Defendants under underlined trademark law from deceiving consumers and impairing its goodwill. National has alleged sufficiently that the "origin" of the lighting fixtures in question, under the Lanham Act, is National. Its claims must stand.

## V.    National Has Pled Sufficiently Its Federal Claim Of False Advertising

Defendants assert that National fails to allege a federal false advertising claim because the FAC is "utterly devoid of any allegation concerning any 'false advertisements' or false statements of any kind made by any of the Moving Defendants." (See Galaxy Arg. § I(D); Bridge Arg. § II.) To establish an actionable false advertising claim under the Lanham Act, a plaintiff must show the advertisement is either (1) literally

false, or (2) although literally true, "likely to deceive or confuse customers". *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp.2d 355, 378 (S.D.NY. 2003), citing *Lipton v. The Nature Co.*, 71 F.3d at 474. "Additionally, in the Second Circuit a plaintiff must also show that the defendants misrepresented an inherent quality or characteristic of the product." *Malaco Leaf*, 287 F. Supp.2d at 378.

National need not allege a literally false advertisement by Defendants. Where a plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff must demonstrate only that the advertisement tends to mislead or confuse customers. *See Johnson & Johnson Merck Consumer Pharmaceuticals Company v. Smithkline Beecham*, 960 F.2d 294, 297 (2d Cir. 1992) (citations omitted). The Second Circuit has held that "where a plaintiff adequately demonstrates that a defendant has intentionally set out to deceive the public, and the defendant's 'deliberate conduct' in this regard is of an 'egregious nature', a presumption arises 'that consumers are, in fact, being deceived.'" *Johnson & Johnson*, 960 F.2d at 298, quoting *Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.*, 926 F.2d 134, 140 (2d Cir. 1991). The *Resource Developers* Court held, "Once it is shown a defendant deliberately engaged in a deceptive commercial practice, we agree that a powerful inference may be drawn that the defendant has succeeded in confusing the public." *Resource Developers*, 926 F.2d at 140.[6] Once a plaintiff establishes deceptive intent, the burden shifts to the defendant to demonstrate that no consumer confusion exists. *Johnson & Johnson*, 960 F.2d at 298.

Under *Malaco Leaf* and *Johnson & Johnson*, National sufficiently has stated a claim for false advertising. National alleges Defendants are, without National's permission, manufacturing, marketing, and selling products identical to National's. (FAC ¶¶ 38-9.) The FAC alleges Defendants stated to National's president that Defendants could and would manufacture lighting fixtures identical to National's specification

---

[6] *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995), defines a "deceptive act or practice" as a representation or omission "likely to mislead a reasonable consumer acting reasonably under the circumstances."

sheets. (FAC ¶¶ 40-41.) Construed in the light most favorable to the plaintiff, Defendants' conduct as alleged is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association between Defendants and National, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by National. 15 U.S.C. §1125(a).[7] National further alleges Defendants acted deliberately to engage in deceptive commercial practices. (See FAC ¶¶ 31-54, alleging Defendants are breaching the Confidentiality Agreement, misappropriating National's proprietary trade secrets to unfairly compete with National, and tortiously interfering with National's prospective economic relations.) In accordance with *Johnson & Johnson* and *Resource Developers*, *supra*, National's allegations of Defendants' deceptive practices and false advertising, when construed in National's favor, adequately state a claim for false advertising.

As to the requirement that a plaintiff show that the defendant misrepresented an inherent quality or characteristic of a product, this need not be proven at the initial pleading phase. In *National Assoc. of Pharmaceutical Mfrs. v. Ayerst Lab.,* 850 F.2d 904, 917 (2d Cir. 1988), the Court held appellants were entitled to "develop their evidence" to prove defendants misrepresented an inherent quality or characteristic of their product.

National alleges Defendants claim their products are "just like National's." (FAC ¶¶ 40-41.) National's allegations have put Defendants on adequate notice of its false advertising claim. Like the appellants in *National Assoc.*, National should be allowed to discover, present, and develop evidence that Defendants misrepresented an inherent quality or characteristic of their "knock-off" products. Since National has met federal notice pleading requirements, its claim for false advertising must stand.

---

[7] *See also Ontario*, 105 F. Supp.2d at 63, recognizing a false advertising claim under the Lanham Act where plaintiffs alleged defendant produced a line of equipment by means of devices that instill the impression that its line is the same as or a continuation of the plaintiff's line, thus creating confusion in present and potential buyers of plaintiff's products.

## VI.    National Has Pled Sufficiently Its Claims Of Unfair Competition

### A.    National Has Pled Sufficiently Its Federal Claim Of Unfair Competition

Defendants next argue National's federal unfair competition claim is based on an "unexplained theory." (See Galaxy Arg. § I(E); Bridge Arg. § V.)   The Southern District of New York recognizes a claim for unfair competition under the Lanham Act, characterizing it as "conceptually broader than trademark protection." *Forschner Group, Inc. v. Arrow Trading Co.*, 904 F. Supp. 1409, 1416 (S.D.N.Y. 1995).

"This broader cause of action requires the proof of two essential elements: (1) an association of origin by the consumer between the mark and the first user, and (2) a likelihood of consumer confusion when the mark is applied to the second user's good." *Id.* at 1417, citing *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 168 (2d Cir. 1991) (requiring that the product in question have acquired secondary meaning). "[S]econdary meaning indicates that the seller, through an expense of time, effort and money, has built up good will in his product, such that the consumer, when perceiving the mark, primarily associates it with the producer of the good and not merely the good itself." *Forschner,* 904 F. Supp. at 1417 (citations omitted).

National alleges that, through a substantial expense of time, effort, and money, it has created secondary meaning for its products in the minds of its consumers and amassed a vast amount of goodwill. (FAC ¶¶ 25-30.) National further asserts Defendants' conduct is likely to cause confusion to consumers. (FAC ¶¶ 39-41; ¶¶ 48-49.) National therefore adequately states a claim for unfair competition.

### B.    National Has Pled Sufficiently Its State Claim Of Unfair Competition

Bridge further asserts National's claim of unfair competition under state law should be dismissed because it is "'based entirely on other claims,' which are legally deficient." (See Bridge Arg. § V.)

"New York recognizes seven bases for a claim of unfair competition. They are: (1) monopoly; (2) restraint of trade; (3) trade secrets; (4) trademark or trade name infringement; (5) palming off; (6); misappropriation; and (7) false labeling or advertising." *Beverage Marketing USA, Inc. v. South Beach Beverage Company, Inc.*, 2007 WL 1187975, at *10 (N.Y. App. Div. 2007), *citing* N.Y. Pattern Jury Instr. -- Civil 3:58 (2007).

National submits that it has pled adequately this claim under New York law providing for causes of action including but not limited to reverse palming off, misappropriation, and false labeling or advertising, all of which are discussed herein.[8]

## VII.   National Has Pled Sufficiently Its Claims Against All Defendants Of Breach of Contract And Breach Of Implied Covenant Of Good Faith And Fair Dealing

### A.   National Sufficiently Alleges An Agency Relationship And A Breach By The Galaxy Defendants

The Galaxy Defendants argue National fails to allege an agency relationship between the Galaxy Defendants and the remaining named defendants (the "Bridge Defendants")(See Galaxy Arg. § II(A).) "New York Courts have recognized that the question of the existence and scope of an agency relationship is a factual issue that a court cannot properly adjudicate on a motion to dismiss." *Old Republic Ins. Co. v. Hansa World Cargo Service, Inc.*, 51 F. Supp.2d 457, 471 (S.D.N.Y. 1999) (citations omitted). At this stage, the Court must accept as true all factual allegations in the complaint. *See Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 377 (2d Cir. 1995). On a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond,* 56 F.3d at 378.

---

[8] National's discussion concerning claims of misappropriation is contained in Section VII, *infra*, relating to its Breach of Contract claim.

There is "case law stating that conclusory allegations of actual or apparent authority is sufficient under the federal pleading rules." *Commercial Financial Services, Inc. v. Great American Ins. Co. of New York*, 381 F. Supp. 291, 302 (S.D.N.Y. 2005), citing *Guar. Residential Lending, Inc. v. Int'l Mortgage Center, Inc.*, 305 F. Supp.2d 846, 861-2 (N.D. Ill. 2004) (the federal pleading rules do not require more than a conclusory allegation of actual or apparent authority). Under these standards, National adequately alleges an agency relationship between the Bridge Defendants and the Galaxy Defendants by alleging the following: Lamberg and Bregman and are and were at all relevant times officers, directors, and employees of Galaxy and Bridge (FAC ¶¶ 9-10); Defendants, acting as alter egos of one another, participated in a conspiracy to purloin National's trade secrets (FAC ¶17);

> "...each Defendant was at all times relevant hereto a controlling person, agent, and/or alter ego of each other Defendant, and in doing the acts as herein alleged, was acting within the course and scope of his or its authority as such with the expressed and implied permission, instruction, knowledge, consent, and ratification of each other Defendant. Each Defendant did influence and govern each other Defendant with such a degree of unity of interest and ownership so that the individuality, or separateness, of each Defendant have ceased to exist." (FAC ¶ 15.)

> "Bridge signed the confidentiality Agreement on behalf of itself, and, acting as Galaxy's agent, alter ego, and otherwise controlling entity on behalf of Galaxy. Defendants Mesa *(sic)* and Fredella had meetings with National both before and after the Agreement was signed in the company of National's accountant. Mesa *(sic)* and Fredella clearly conducted themselves in those meetings as ***Galaxy's*** decisionmakers. Defendants Bregman and Lemberg *(sic)* acquiesced to these discussions. (FAC ¶33.)

Defendants claim these allegations do not establish an agency relationship, relying on *Cannon v. Douglas Elliman, LLC*, 2007 WL 4358456 (S.D.N.Y. 2007).The Honorable Buchwald's opinion in this decision supports a finding of sufficient agency allegations by National. In *Cannon*, this Court dismissed plaintiff's complaint because it contained no factual claims that the alleged agent signed certain documents for the

alleged principal, and it pled no allegation that the one defendant controlled, or even affected, the conduct of the other defendant (relying on *Commercial Financial*, 381 F. Supp.2d at 302, and *Adipar Ltd. v. PLD Int'l Corp.*, 2002 WL 31740622, at *9 (S.D.N.Y. 2002)). The only facts in the *Cannon* complaint related to the purported agency relationship between defendants were they entered into a joint venture and opened a sales office together. *See Cannon*, 2007 WL 4358456 at *5.

Notwithstanding Defendants' futile argument that National's assertions are "conclusory", the FAC alleges several facts pointing to an actual and apparent agency relationship, above and beyond those asserted by the *Cannon* plaintiff. National therefore sufficiently alleges both an actual and apparent agency relationship between the Bridge Defendants and Galaxy Defendants. National also has alleged that defendants Bregman and Lamberg are bound by the terms of the Confidentiality Agreement. The Agreement provides that Bridge's and Galaxy's agents, **employees**, or representatives, including their **directors** and **officers** are obligated to keep the Confidential Information confidential. (See FAC Exh. A, p.1.)

As stated above, National alleges that Bregman and Lamberg were at all relevant times, officers, directors, and employees of Defendants Bridge and Galaxy, as defined in the Confidentiality Agreement. (See FAC, ¶¶ 9-10.) The FAC also states that Bregman and Lamberg acquiesced to the Bridge Defendants' decision to enter into the Confidentiality Agreement, (FAC, ¶ 33), unlike the plaintiffs in Defendants' case *1230 Park Associates, LLC, v. Northern Source, LLC*, 852 N.Y.S.2d 92, 93 (N.Y. App. Div. 2008), who knew nothing about the transaction in question.

Even assuming *arguendo*, Bregman and Lamberg were not parties to the written Agreement, they still were bound to keep the "Confidential Information" confidential. The Second Circuit has acknowledged that "an express agreement is not a prerequisite to the establishment of a confidential relationship", one of the components of a cause of

action for unfair competition under state law.[9] *Rototron Corp. v. Lake Shore Burial Vault Co., Inc.,* 553 F. Supp.691, 697 (E.D. Wis. 1982), citing *Heyman v. Winarick, Inc.,* 325 F.2d 584, 587 (2d Cir. 1963). In *Heyman,* the Court agreed with the holding of *Hoeltke v. C.M. Kemp Mfg. Co.,* 80 F.2d 912 (4th Cir. 1935), wherein the plaintiff turned over to the defendant detailed information and revealed the "know-how" of its product manufacture during negotiations toward manufacture of plaintiff's product by defendant under a license. *Heyman,* 325 F.2d at 587. The *Hoeltke* Court held that, even where there was no express agreement to hold the information in confidence and not to use it if the negotiations . . . were not successful, there was a confidential relationship created between the parties which restricted the right of the bound party to use the information for purposes for which the disclosures were made. *Hoeltke,* 80 F.2d at 923.

Construing all of National's allegations as true, as this Court must in a 12(b)(6) motion, National adequately pleads a cause of action for breach of contract against all the Galaxy Defendants, including Bregman and Lamberg. Even if Bregman and Lamberg are found not to be parties to the Confidentiality Agreement, they may be personally liable under a theory of unfair competition pursuant to *Heyman* and *Hoeltke.*

**B.    National Sufficiently Alleges A Claim Against Bridge For Breach Of Contract**

Bridge claims in part that National has no claim for a breach of contract against it, because National fails to plead facts concerning "the actual confidential trade secrets" National provided to the defendants. (See Bridge Arg. § VI.) Whether Bridge is implying by this statement that National is obligated to set forth the substance of its trade secrets in the FAC is unclear. If that is the case, National submits that such a requirement would be (a) against public policy and (b) in direct contradiction to the notice pleading requirements under the Federal Rules.

---

[9]  The Galaxy Defendants do not contest the substance of this cause of action as stated by National.

Notwithstanding Bridge's ambiguous implication, National has pled adequately the secret nature of the confidential information it provided to the defendants. New York state courts endorse the Restatement of Torts' definition of "trade secret" as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him opportunity to obtain an advantage over competitors who do not know or use it." Restatement (First) of Torts §757 (1939); *see also Ashland Management Inc. v. Janien*, 624 N.E.2d 1007, 1012-1013 (N.Y. 1993).

The Restatement of Torts suggests that, in deciding a trade secret claim, several factors should be considered:

> (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Restatement (First) of Torts §757 cmt. b (1939). Bridge's Motion grossly understates the breadth of National's allegations in the FAC, which pleads facts to support every element set forth by the Restatement of Torts. (See, in addition to excerpts quoted in the Bridge Motion, FAC ¶ 25, concerning National's years of work and effort and expenditure of substantial monies in developing product; ¶ 28, on proprietary information known only to National until 2005, training necessary to duplicate National's product and difficulty of duplicating National's product without training, never revealing trade secrets to another company prior to entering into Confidentiality Agreement; ¶ 50, on National providing defendants with identities and contact information of long-standing clientele under the purview of the Confidentiality Agreement; ¶ 51, on defendants' lack of ability to duplicate National's products without trade secrets National developed over

the course of sixty-six (66) years.) National alleges sufficient facts to put Bridge on notice of this cause of action under federal pleading standards.

Bridge relies on *Hudson Hotels Corp. v. Choice Hotels, Int'l*, 995 F. 2d 1173, 1177 (2d Cir. 1993), and other cases[10], in asserting that National publicly marketed its designs and therefore has lost the confidential or secret nature of its trade secrets. Bridge's reliance is misplaced. Similarly to the cases Defendants cite in support of their arguments concerning National's federal claims, *Hudson, Speciner, Blank,* and *Eagle Comtronics* all were decided after courts reviewed evidence using summary judgment, trial, and/or preliminary injunction standards. National adequately pleads allegations showing the secrecy of its trade secrets and is not required at this stage to present the type of evidence analyzed in the foregoing cases.

National further did not disclose its trade secrets by making publicly available its specification sheets. Nothing in those sheets reveals the techniques, formulas, training, assembly instructions, and clientele information National developed over 66 years and provided to defendants pursuant to the Confidentiality Agreement.

"Whether the plaintiffs have any valuable secret or not the defendant knows the facts, whatever they are, through a special confidence that he accepted. The property may be denied, but confidence cannot be. Therefore the starting point for the present matter is ... that the defendant stood in confidential relations with the plaintiffs…the first thing to be made sure of is that the defendant shall not fraudulently abuse the trust reposed in him. It is the usual incident of confidential relations." *Du Pont de Nemours Powder Co. v. Masland*, 244 U.S. 100, 102 (1917).

As was the case in *Schreyer v. Casco Products Corp.*, 97 F. Supp. 159, 168 (D.C. Conn. 1951)[11], the FAC similarly asserts that the defendants took advantage of the

---

[10] *See Speciner v. Reynolds Metals Co.*, 279 F.2d 337 (2d Cir. 1960); *Blank v. Pollack*, 916 F. Supp. 165 (N.D.N.Y. 1996); *Eagle Comtronics, Inc. v. Pico, Inc.*, 453 N.Y.S.2d 470 (N.Y. App. Div. 1982).
[11] Reversed in part and affirmed in part by *Schreyer v. Casco Products Corp.*, 190 F.2d 921 (2d. Cir. 1951), leaving in tact court's analysis concerning improper disclosure of trade secrets.

confidence which "[plaintiffs] reposed in them and obtained the desired knowledge without the expenditure of money, effort and ingenuity which...experimental analysis...would have required. Such an advantage obtained through breach of confidence is morally reprehensible and a proper subject for legal redress." "The principle that one may not misappropriate the results of the skill, expenditures and labors of a competitor has...often been implemented in [New York] courts." *ITC Limited v. Punchgini, Inc.*, 9 N.Y.3d 467, 477 (N.Y. 2007) (citations omitted).

Bridge's argument that it was prohibited from *disclosing* the Confidential Information, but not prohibited from *using* it, is without merit, and at worst, disingenuous. The Restatement (First) of Torts § 757 provides that one who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if his disclosure *or use* constitutes a breach of confidence reposed in him by the other in disclosing the secret to him. As explained in Section VII(A), *supra*, the Second Circuit recognizes that where there is no express agreement to hold the information in confidence and not to use it if the negotiations . . . are not successful, the confidential relationship created between the parties restricts the right of the bound party to disclose or *use* the information for purposes for which the disclosures were made. *See Heyman*, 325 F.2d at 587, (citations omitted); *see also Fairchild Engine & Airplane Corp. v. Cox*, 50 N.Y.S.2d 643, 650-57 (N.Y. App. Div. 1944) (finding bound party obligated not to use or disclose trade secrets or other confidential matters even after termination of relationship wherein confidences were exchanged). Bridge, therefore, was and is at all relevant times prohibited from disclosing *and/or using* the Confidential Information except for those purposes designated in the Confidentiality Agreement.

Bridge's argument that National fails to allege that it has improperly "disclosed" the Confidential Information also lacks merit. The FAC asserts at ¶¶ 41-46 that the "Bridge Defendants" (including Bridge) are conspiring with the other named defendants to manufacture, market and sell products created from the purloined Confidential

Information, and that Bloomberg is assisting the other Defendants to manufacture, engineer, create, market, advertise, and sell fixtures based on the Confidential Information Bridge and the other Bridge Defendants wrongfully purloined from National.

Construed in the light most favorable to National, and taking all of the FAC's allegations as true, National has alleged sufficiently this cause of action against Bridge.

### C.    National Sufficiently Alleges A Claim Against All Defendants For Breach Of The Implied Covenant Of Good Faith And Fair Dealing

Defendants allege National has not pled adequately its claim of breach of the implied covenant of good faith and fair dealing. (See Galaxy Arg. § II(B); Bridge Arg. § VII.) As explained above, Defendants all were obligated to keep in confidence National's Confidential Information under the Confidentiality Agreement and the implied contract created by their confidential relationship with National. "Under New York law, every contract contains an implied covenant of good faith and fair dealing." *Carvel Corp. v. Diversified Management Group, Inc.*, 930 F.2d 228, 230 (2d Cir. 1991). The covenant of good faith and fair dealing "precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement." *Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir. 1980). The covenant "is violated when a party to a contract acts in a manner that, although not expressly forbidden in any contractual provision, would deprive the other of the right to receive the benefits under their agreement." *Don King Productions, Inc. v. Douglas,* 742 F. Supp.741, 767 (S.D.N.Y. 1990).

Defendants erroneously rely on *Tierney v. Omincom Group Inc.*, 2007 WL 2012412, at *7 (S.D.N.Y. 2007). National meets the threshold pleading requirement under *Tierney*. When the FAC is construed in favor of plaintiff, National has more than adequately alleged that Defendants engaged in conduct that deprives National of the benefit of the Confidentiality Agreement. (See FAC ¶¶ 38-54.) The allegations set forth in the FAC constitute more than a "statement of a mere contract breach." Defendants' conduct as alleged amounts to them acting for their own benefit and depriving National

of the benefit of the Confidentiality Agreement's protection of their trade secrets. National has stated sufficiently a cause of action against all the Defendants for breach of the implied covenant of good faith and fair dealing.

**VIII.  National Has Pled Sufficient Facts To Support A Finding Of Personal Liability On The Part Of Messa And Fredella Under All Causes Of Action Asserted Against Them**

Messa and Fredella claim in their Motion that National fails to state a claim for their individual liability. If this Court is inclined to accept the Messa/Fredella Motion together with their Joinder notwithstanding their failure to comply with page limitations imposed by this Court's Individual Practices, National submits that it has alleged sufficient facts to support a finding of personal liability on Messa's and Fredella's part.

"While a corporate officer is not necessarily individually liable for torts committed on behalf of the corporation, personal liability for trademark infringement and unfair competition is established 'if the officer is a moving, active conscious force behind [the defendant corporation's] infringement.'" *Monsanto Company v. Haskel Trading, Inc.*, 13 F. Supp.2d 349, 354 (E.D.N.Y. 1998), quoting *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 913 (E.D.N.Y. 1988). The *Monsanto* Court found the defendant could be held personally liable for any violations the plaintiff may establish, qualifying its finding by noting that defendant's "role in the operation, however, remains disputed. Whether [defendant] may be held personally liable for any such violation therefore must await trial." *Monsanto*, 13 F. Supp.2d at 354. "[A] corporate officer who controls corporate conduct and thus is an active individual participant in that conduct is liable for the torts of the corporation." *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1052 (2d Cir. 1985).

National alleges (a) Messa is the President of Galaxy (FAC ¶ 6); (b) they were at all relevant times officers, directors, and employees of Galaxy and Bridge (FAC ¶¶ 7-8); and (c) they each were at all relevant times a controlling person, agent, and/or alter ego of

each other defendant (FAC ¶ 15). National further alleges Messa and Fredella conducted themselves as decisionmakers at meetings with National prior to entering into the Confidentiality Agreement and signed the Confidentiality Agreement. They also agreed to be bound personally by the Agreement (see FAC Exh. A, p.1, providing that Bridge's and Galaxy's agents, **employees**, **directors** and **officers** are obligated to keep the Confidential Information confidential.) Messa and Fredella rely foremost on *Bezuszka v. L.A. Models, Inc.*, 2006 WL 770526 (S.D.N.Y. 2006) in arguing they should not be held personally liable. First, it is distinguishable in that it concerns California law instead of New York law. It also is factually distinct from this case. This Court dismissed the *Bezuszka* plaintiff's claim because, unlike the case at bar, it failed to allege that the individual defendant was the ***alter ego*** of his companies, and the individual ***did not sign any of the agreements*** in question. *Bezuszka*, 2006 WL 770526 at *10.

Messa and Fredella also claim National failed to plead any facts concerning their involved in the alleged wrongdoing. *Phonometrics*, *supra*, provides that, under the Federal Rules of Civil Procedure, National is not required articulate in detail the facts upon which it bases its claim. *See Phonometrics*, 203 F.3d at 790. National adequately alleges Messa's and Fredella's involvement in wrongful conduct. (See FAC ¶ 38, alleging Bridge Defendants, including Messa and Fredella, caused Bridge to breach the Confidentiality Agreement and were using the Confidential Information without National's permission to manufacture, market, and sell products apparently identical to National's; FAC ¶ 40, alleging Defendants, including Messa and Fredella, were now in the business of manufacturing and selling fixtures to National's customers and potential customers; ¶¶ 48-50, alleging Defendants, including Messa and Fredella, are selling products based on the Confidential Information and trade secrets they misappropriated from National, palming off cloned National products as their own, causing a likelihood of confusion among the public, and attempting to rob National of its goodwill.) These allegations, among others, together with National's allegations that Messa and Fredella

were and are officers, directors, and alter egos of Bridge and Galaxy, sufficiently allege that Messa and Fredella were involved in the wrongdoing and/or were the moving, active conscious force behind Bridge's and Galaxy's infringement.

*Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp.2d 238 (S.D.N.Y. 2001), and *Vitanza v. Board of Trade of the City of New York, Inc.*, 2002 WL 424699 (S.D.N.Y. 2002), cited by Messa and Fredella, also are inapplicable. Each of these cases involved statutory causes of action requiring heightened specificity in pleading the conduct of the defendant. *See Rose*, 163 F. Supp.2d at 242, involving a statutory racial discrimination claim and *Vitanza*, 2002 WL 424699 at *7, involving statutory claims brought under the Commodity Exchange Act. Defendants also look to *Electronics Communications Corp. v. Toshiba Am. Consumer Prods. Inc.*, 129 F.3d 240, 243 (2d Cir. 1997) to support their argument that National fails to meet the requisite pleading standard. *Electronics*, however, was dismissed not because the plaintiff failed to allege liability of individual officers or directors, but because the plaintiff failed to meet the burden of pleading a statutory claim for restraint of trade under the Sherman Act. *See Electronics*, 129 F.3d at 243-45.

Under the federal pleading standards, Messa and Fredella are on sufficient notice of the bases for National's claims against them, and the assertions set forth support a theory of personal liability pursuant to *Monsanto.*

Messa and Fredella further are personally liable because they agreed to be bound by the Confidentiality Agreement. (See FAC Exh. A.) For the same reasons that Defendants Lamberg and Bregman are bound personally by the confidentiality agreement, as set forth herein in Section VIIA of this argument, *supra*, Messa and Fredella are prohibited from disclosing or using the Confidential Agreement. National has alleged sufficient facts under federal pleading requirements to support a claim for personal liability as to Messa and Fredella. As was the case in *Monsanto*, which was

decided on a motion for summary judgment standard, Messa's and Fredella's actual role in the wrongdoing National alleges is a question of fact for determination at trial.

In light of the FAC's sufficient allegations against Messa and Fredella, the question of their liability under alternative theories need not be reached. *See LaLumia v. Schwartz,* 257 N.Y.S.2d 348 (N.Y. App. Div. 1965) (corporate officer who participates in the commission of a tort may be held individually liable, regardless of whether the officer acted on behalf of the corporation in the course of official duties and regardless of whether the corporate veil is pierced). National nonetheless addresses Messa's and Fredella's arguments in this regard as follows.

Messa and Fredella assert National has failed to plead facts that could support piercing the corporate veil. National claims, in addition to the aforementioned FAC allegations, Messa and Fredella were alter egos of Bridge and Galaxy (FAC ¶¶ 15-16), they controlled the conduct of Bridge (FAC ¶ 35), they conspired to and caused Bridge to breach the Confidentiality Agreement (FAC ¶ 38), and their conduct caused injury to National (FAC ¶ 53-54). Unlike the plaintiff in *In re Currency Conversion Fee Antitrust Litig.,* 265 F. Supp.2d 385, 426 (S.D.N.Y. 2003), who simply made an "unadorned invocation of dominion and control", National has alleged sufficient facts to support its allegations under an alter ego theory. Unless fraud is a necessary element of the claim, allegations properly of alter ego liability properly are judged according to the liberal notice pleading standard of Fed. R. Civ. Proc. 8(a), which requires only a short and plain statement of the claim showing the pleader is entitled to relief. *See Rolls-Royce Motor Cars, Inc. v. Schudroff,* 929 F. Supp. 117, 122 (S.D.N.Y. 1996). "Resolution of the alter ego issue is heavily fact-specific" and therefore is not a resolution that can be reached on a motion to dismiss. *See United States v. Jon-T Chemicals, Inc.,* 768 F.2d 686, 694 (5th Cir. 1985) (affirming district court's piercing of corporate veil after weighing evidence at trial). National has met the pleading requirements for asserting alter ego liability on Messa's and Fredella's part as to every cause of action pled against them.

As to Messa's and Fredella's contention that National fails to plead conspiracy liability, National submits that its allegations in FAC ¶¶ 17, 38, and 41, as cited by Messa and Fredella, together other allegations including but not limited to those in FAC ¶¶ 7,8, 15, and 16, constitute facts sufficient to support individual liability under a theory of conspiracy. "[G]reat latitude is allowed in setting out in the complaint the particular acts from which the conspiracy is to be inferred." *Goldstein v. Siegel*, 244 N.Y.S.2d 378 (N.Y. App. Div. 1963). Disconnected acts may, when taken together, satisfactorily establish a conspiracy. *See Keviczky v. Lorbor*, 49 N.E.2d 146 (N.Y. 1943). National accordingly has alleged sufficient facts to support a finding of individual liability on Messa's and Fredella's part.

## IX.    National Has Pled Sufficiently Its State Claim of Reverse Palming Off

In response to Defendants' claims that National fails to state a federal claim for reverse palming off, National submits that it has pled its claim adequately for reverse palming off under state law. (See Galaxy Arg. § III(A); Bridge Arg. § I.) *See Fragrancenet.com, Inc. v. Fragrancex.com, Inc.*, 493 F. Supp.2d 545, 548 (E.D.N.Y. 2007) (citations omitted) (elements of palming off under New York law are identical to standards applied to the Lanham Act and "[t]he same analysis is used for common law trademark infringement and unfair competition cases as is used under federal law".)

## X.    National Has Pled Sufficiently Its State Claims of False Advertising And Labeling And Deceptive Trade Practices

Defendants claim National has not alleged adequately its claims for false advertising, false labeling, and deceptive trade practices under New York law. (See Galaxy Arg. § III(B); Bridge Arg. § II.) National acknowledges that Sections 349 and 350 of the New York General Business Law are consumer protection statutes. *See Perkins School for the Blind v. Maxi Aids, Inc.*, 274 F. Supp.2d 319, 327 (E.D.N.Y. 2003). The essential elements of a cause of action under Section 349 are: "(1) a deceptive consumer-oriented act or practice which is misleading in a material respect,

and (2) injury resulting from such act." *Exxonmobil Inter-America, Inc. v. Advanced Information Engineering Services, Inc.*, 328 F. Supp.2d 443, 447 (S.D.N.Y. 2004) (citations omitted). A claim under these statutes is proper if it asserts consumer injury or harm to the public interest. *See Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264-65 (2d Cir. 1995).

National alleges Defendants engaged in a deceptive act harmful to the public interest by asserting they are making statements intended to deceive the public about the association, sponsorship, affiliation or connection between Defendants and National. (FAC ¶ 40, alleging that they would manufacture products identical to National's; FAC ¶ 49, alleging Defendants' conduct causes a likelihood of confusion among the consuming public; FAC ¶¶ 51-2, alleging Defendants are using misappropriated trade secrets and intentionally confusing consumers and palming off products to the clientele and goodwill developed exclusively by National.)

Construing the allegations in the light most favorable to National and resolving any doubts as to the allegations in National's favor, Defendants' conduct constitutes harm to the public interest. National asserts: Defendants are deceiving customers who install National's fixtures in commercial, educational, hospital, governmental and other large-scale facilities; National's products are installed in most major office buildings in the New York tri-state vicinity and in various structures throughout the country; National's customers specify National's fixtures in their lighting and construction plans; and the end users of its fixtures trust National to provide the best possible, most appropriate product for the job. (FAC ¶¶ 23-29.) The large-scale interests being harmed by Defendants' conduct, as asserted in the FAC, amount to a public interest. National's claims of false advertising, false labeling and deceptive trade practices must therefore stand.

XI.    **National Has Pled Sufficiently Its State Claim Of Tortious Interference With Prospective Economic Relations**

Defendants claim National fails to state a claim of tortious interference with prospective economic relations. (See Galaxy Arg. § III(C); Bridge Arg. § III.) To properly assert this claim under New York Law, a plaintiff must allege "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003).

Defendants utterly mischaracterize the FAC, claiming the only allegations in the FAC concerning Defendants' alleged interference are in Paragraphs 52 and 87. (See Galaxy Motion, p. 22; see also Bridge Motion, pp.9-10, claiming no facts alleged to support claim against Bridge.) National actually alleges a substantial number of facts to support each one of the elements for this claim. (See FAC ¶¶ 35-54, alleging: National gave Defendants National's longstanding clientele's contact information; Lemberg claimed Defendants were now manufacturing and selling lighting to National's customers and potential customers; Defendants unfairly are using misappropriated trade secrets and intentionally confusing those clientele to whom National has catered for over fifty years, all on National's secondary meaning and goodwill; Defendants wrongfully attempt to gain an unfair advantage over National by using pilfered trade secrets to jump-start their entry into business; Defendants are falsely advertising and deceptively palming off their products to confuse and deceive the public; and Defendants' conduct is intentional, willful, wanton, malicious, oppressive, and reckless, and has caused National damages.)

National has pled a cognizable cause of action for tortious interference with prospective economic relations under federal pleading rules and in accordance with New York state law. National's allegations far exceed the threshold level of pleading set forth in cases Defendants cite. This cause of action must therefore stand.

## XII.    National Is Authorized To Bring This Action Before This Court

Defendants' final argument is that if National's federal claims are dismissed, National may not prosecute any remaining state claims because of its failure to comply with Section 1312 of the New York Business Corporation Law. (See Galaxy Arg. § IV; Bridge Arg. § VIII.) Defendants argue that National is required to obtain authority to do business in New York pursuant to Section 1312(a) in order to bring this action.

Bridge's Counsel, Sean Mack, attests in his Certification to conducting a similar search with similar result and attaches the search result. (Mack Cert., ¶¶ 2-3. and Exh. "A".) Counsel for the Galaxy Defendants, David Rosenberg, also attests in his Affidavit that he caused a search to be conducted at the office of the New York Secretary of State for records indicating National's authorization "to conduct business in the State of New York." (Rosenberg Aff., ¶ 7.) The Galaxy Defendants request this Court to take judicial notice of the search to which Counsel attests in his affidavit (Galaxy Motion, p.24.).

While National acknowledges this Court's authority to take judicial notice of public records, National respectfully submits that the factual issues raised by Defendants constitute extrinsic evidence not subject to judicial notice. Defendants' Counsel's affidavits and exhibit introduce matters outside the pleadings by raising a question of whether National is "doing business" in New York for purposes of Section 1312. In *SD Protection, Inc. v. Del Rio*, 498 F. Supp.2d 576 (E.D.N.Y. 2007), the Court found that

> [T]he question of whether [the plaintiff] is 'doing business' in New York for the purposes of Section 1312 cannot resolved without discovery.... There is no ... precise measure of the nature or extent of activities which are determinative of whether a foreign corporation is 'doing business' within this state. Each case must be decided on its own particular facts. *SD Protection*, 498 F. Supp.2d at 581 (declining to grant defendants' motion to dismiss because more information was required).

Defendants claim National's allegations in FAC ¶¶ 23-25 and ¶ 48 give rise to a requirement that National obtain authority to do business in New York. As the *SD Protection* Court recognizes, though, this is a question of fact to be decided after

discovery. *Id.* New York Courts have held a plaintiff foreign corporation was not "doing business" in New York under Section 1312(a) where it did not "own real property, maintain an inventory of securities, or an office for the purpose of transacting business, a telephone listing, advertise for the sale of securities or employ any New York resident" even though that plaintiff had made over $40,000,000 in sales in New York and the contract in question was executed in New York. *See Invacare Corp. v. John Nageldinger & Son, Inc.*, 576 F. Supp. 1542, 1545 (E.D.N.Y. 1984)(citations omitted).

To prove that National is in violation of Section 1312(a), Defendants must show not only that National "is doing business in New York, but also that the business is wholly intrastate." *Dominio Media, Inc.* v. *Kranis*, 9 F. Supp.2d 374, 386 (S.D.N.Y. 1998), citing *Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 33 (1974). "*Allenberg* stands for the proposition that a state 'door closing' statute[12] may not impede a diversity action concerning interstate or foreign commerce … brought in a federal court." *Grand Bahama Petroleum Company, Limited* v. *Asiatic Petroleum Corporation*, 550 F.2d 1320 (2d Cir. 1997). The case at bar is a diversity action concerning interstate commerce. (See FAC allegations concerning diversity of parties' jurisdiction at ¶¶ 1-14.) National therefore is not bound by Section 1312(a) and has standing to bring this action. The question of whether National's conduct rises to the level of "permanent, continuous, and regular" pursuant to *Netherlands Shipmortgage Corp., Ltd. v. Madias*, 717 F.2d 731, 736 (2d Cir. 1983), is a factual one for resolution after discovery.

If the Court is inclined to accept Defendants evidence in this regard, National contends Defendants' motion should be treated as one for summary judgment, and the Court should decline to rule on the motion to at this time to allow the parties to conduct necessary discovery pursuant to *Gay* and *Kramer*, *supra*. If in the alternative this Court does not consider Defendants' Counsel's affidavit to be extrinsic evidence and proceeds

---

[12] *Dominio* refers to New York Business Corporation Law Section 1312(a) as New York's "door closing statute". *See Dominio*, 9 F .Supp. 374 at 385.

to review the Motion as one to Dismiss, National submits that (a) it is exempt from §1312 requirements under the *Allenberg* Interstate Commerce exception and (b) its conduct does not rise to the level of "conducting business" for purposes of §1312 because it does not maintain an office in New York, has no telephone or facsimile lines in New York, owns no real property in New York, and has no inventory of securities in New York.

To the extent this Court evaluates Defendants' evidence under a 12(b)(6) standard, National submits that it is exempt from the requirements of §1312 and is entitled to bring this action before this Court.

## CONCLUSION

In light of the foregoing, National requests this Court to deny each and all of the Defendants' Motions to Dismiss in their entirety. To the extent the Court grants any portion of Defendants' Motions, National respectfully requests that National be granted leave to amend such cause(s) of action, or in the alternative, that the Court dismiss such cause(s) of action without prejudice.

DATED:  August 18, 2008.

Submitted by,

SHUSTAK FROST & PARTNERS, P.C.
ERWIN J. SHUSTAK


_____/s/ Erwin J. Shustak_____
Erwin J. Shustak (ES 5617)
shustak@shufirm.com

400 Park Avenue
New York, NY 10022
Telephone: (212) 688-5900
Facsimile: (212) 688-6151

Of Counsel:
SHUSTAK FROST & PARTNERS, P.C.
JONAH A. TOLENO
401 West "A" Street, Suite 2330
San Diego, CA 92101
Telephone: (619) 696-9500
Facsimile: (619) 615-5290

Attorneys for Plaintiff