UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

NATIONAL LIGHTING COMPANY, INC. a New : 
Jersey Corporation, :
 :
                              Plaintiff, :
 :
                 v. :                    Case No. 08 CV 03150
 :
BRIDGE METAL INDUSTRIES, LLC, a New York :
Limited Liability Company; JOSEPH MESSA, an :
individual; GALAXY SWITCHGEAR INDUSTRIES, :
LLC, a New York Limited Liability Company; :
BLAISE FREDELLA, an individual; ISAK :
LEMBERG, an individual; BORIS BREGMAN, an :
individual; PICASSO LIGHTING INDUSTRIES :
LLC, a New York Limited    Liability Company; :
INDEPENDENT LIGHTING, LLC,  a New York :
Limited Liability Company; GREEN LIGHT :
SOLUTIONS, LLC;  and MITCHELL :
BLOOMBERG, an individual, :
 :
                              Defendants. :
------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW OF DEFENDANTS GALAXY SWITCHGEAR
INDUSTRIES, INC., ISAK LAMBERG, BORIS BREGMAN, PICASSO LIGHTING
INDUSTRIES LLC, INDEPENDENT LIGHTING, LLC N/K/A GREEN LIGHT
SOLUTIONS, LLC AND MITCHELL BLOOMBERG IN FURTHER SUPPORT OF
THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

THE AMENDED COMPLAINT SHOULD BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . 1

    A.  Plaintiff has Failed to State a Claim For Infringement
       Of Product Design Trade Dress Under the Lanham Act . . . . . . . . . . . . . . . . . . . . 1

    B.  The Allegations Fail to State Any Claims Based Upon
       False Designation of Origin . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.  Plaintiff Has Failed to Allege That Defendants Misrepresented
       an Inherent Quality or Characteristic of Its Light Fixtures . . . . . . . . . . . . . . . . . 6

    D.  Plaintiff's Failure to Allege Any Agency Relationship  . . . . . . . . . . . . . . . . . . . 7

    E.  The Application of Section 1312 of the N.Y.
       Business Corporation Law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

<u>CASES</u>                                                                                                    <u>Page(s)</u>

<u>777388 Ontario Limited v. Lencore Acoustics Corp.</u>,
    105 F.Supp.2d 56 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

<u>Allenberg Cotton Co. v. Pittman</u>,
    419 U.S. 20, 95 S.Ct. 260 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Antioch Co. v. Western Trimming Corp.</u>,
    347 F.3d 150 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Bonito Boats, Inc. v. Thunder Craft Boats, Inc.</u>,
    489 U.S. 141, 109 S.Ct. 971 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Cannon v. Douglas Elliman, LLC</u>,
    2007 WL 4358456 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Commercial Financial Services, Inc. v. Great American Ins. Co. of New York</u>,
    381 F.Supp.2d 291 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>,
    539 U.S. 23, 123 S.Ct. 2041 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

<u>Dominio Media, Inc v. Kranis</u>,
    9 F.Supp2d 374 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Grand Bahama Petroleum Co., Ltd v. Asiatic Petroleum Corp.</u>,
    550 F.2d 1320 (2d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Guaranty Residential Leasing , Inc v. Int'l Mortgage Center, Inc.</u>,
    305 F.Supp.2d 846 (N.D.Ill. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Jeffrey Milstein Inc v. Gregor, Lawlor, Roth, Inc.</u>,
    58 F.3d 27 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Landscape Forms Inc v Columbia Cascade Co.</u>,
    113 F.3d 373 (2d Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 3

<u>Malaco Leaf, AB v. Promotion in Motion, Inc.</u>,
    287 F.Supp.2d 355 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

National Ass'n of Pharmaceutical Mfrs. v. Ayerst Lab,
        850 F.2d 904 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Netherlands Shipmortgage Corp., Ltd. v. Madias,
        717 F.2d 731 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

O Zon Inc. v. Charles,
        272 F.Supp.2d 307 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Rosza v. May Davis Group, Inc.,
        187 F.Supp.2d 123 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Sherwood 48 Associates v. Sony Corporation of America,
        76 Fed Appx. 389, 2003 WL 22229422 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 2

Shevy Custom Wigs, Inc. v. Aggie Wigs,
        2006 WL 3335008 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Waldman Publishing Corp. v. Landoll,
        43 F.3d 775 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Walker Manufacturing, Inc. v. Hoffman,
        261 F.Supp.2d 1054 (N.D. Iowa, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Yurman Design Inc. v. PAJ, Inc.,
        262 F3d 101 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

This Reply Memorandum of Law is respectfully submitted on behalf of the Galaxy Defendants and the Picasso Defendants[1]: a) in further support of their motion (the Motion) to dismiss the Amended Complaint and b) in reply to Plaintiff's Memorandum of Law In Opposition to the Motion, dated August 18, 2008 (the "Opp. Mem.").

## ARGUMENT

### THE AMENDED COMPLAINT SHOULD BE DISMISSED

**A.    Plaintiff has Failed to State a Claim For Infringement
Of Product Design Trade Dress Under the Lanham Act**

Plaintiff argues that it adequately pled a claim for infringement of product design trade dress under the Lanham Act, notwithstanding its failure to articulate the specific elements comprising its alleged product design trade dress. Plaintiff relies primarily on 777388 Ontario Limited v. Lencore Acoustics Corp., 105 F.Supp.2d 56 (E.D.N.Y. 2000). The Ontario decision is easily distinguishable. In Ontario, the Court stated, in relevant part, that "plaintiffs have sufficiently pleaded the key elements: namely that they held *property interests protected by registered patents and trademarks* in a line of products with a distinctive identity at least in the minds of their customers . . ." Ontario, 105 F.Supp.2d at 64 (emphasis supplied).[2] In Ontario, there was no need to articulate the elements which made Plaintiffs' alleged trade dress distinctive because the alleged trade dress was based upon the registered trademarks and patents held by plaintiffs. At bar, National has no registered trademarks or patents. Ontario is inapposite.

In the absence of any registered patent or trademark, National must identify exactly which elements make its product design trade dress distinctive, Landscape Forms, Inc. v.

---

[1] Unless otherwise defined herein, all defined terms used herein shall have the meaning set forth in the Moving Memorandum of Law of the Moving Defendants (the "Moving Mem).

[2] National's citation to Ontario is misleading, as it has intentionally omitted the following words from the Court's opinion: "protected by registered patents and trademarks" to reference the line of products with a distinctive identity.

Columbia Cascade Co., 113 F.3d 373, 380-381 (2d Cir.1997), as well as identify those

distinctive elements which are common to the entire line of National's products for which it

seeks protection. Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 116 (2d Cir. 2001). Plaintiff

has utterly failed to adequately plead a claim for infringement of product design trade dress for

its entire line of products.

Furthermore, although Rule 8(a) of the Federal Rules of Civil Procedure only requires

that the Amended Complaint contain a short and plain statement of the facts sufficient to give

defendants notice of Plaintiff's claims, the Amended Complaint fails even to meet this relatively

low standard: the failure to articulate the precise elements which comprise the trade dress fail to

give defendants notice of the facts upon which National's alleged *product design trade dress* is

based. Instead, the Amended Complaint only refers to general categories or types of elements,

not to the specific elements of the subject fixtures (Am.Compl. ¶26).

Contrary to Plaintiff's claims otherwise (Opp. Mem., p.9), the cases cited by the Moving

Defendants do articulate a requirement for pleading the specific elements comprising an alleged

product design trade dress. Indeed, many of the cases cited by the Moving Defendants grant

dismissal motions for failure to meet this basic pleading requirement. *See e.g.* Sherwood 48

Associates v. Sony Corp. of America, 76 Fed.Appx. 389, 2003 WL 22229422 (2d Cir. 2003);

Shevy Custom Wigs, Inc. v. Aggie Wigs, 2006 WL 3335008 (E.D.N.Y. 2006); O Zon Inc. v.

Charles, 272 F.Supp.2d 307 (S.D.N.Y. 2003). The Court granted dismissal motions in all of

these cases because plaintiffs, at the pleading stage, did not "identify the specific elements" that

comprise the alleged trade dress. Sherwood 48, *supra* at *2.

Accordingly, in the absence of any registered patent or trademark, in order to state a

claim for infringement of a *product design trade dress of an entire line of products,* Plaintiff

must articulate the specific elements which comprise its allegedly distinctive dress. This is what is necessary in order to meet the "fair notice" requirements of FRCP 8 (a) for a Lanham Act claim. "Without such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market. Courts will be unable to shape narrowly tailored relief if they do not know what distinctive combination of ingredients deserves protection." Landscape Forms, 113 F.3d at 381. National not only fails to identify "the combination of elements that should be the focus of the distinctiveness inquiry," Jeffrey Milstein Inc v. Gregor, Lawlor, Roth, Inc., 58 F.3d 27, 32 (2d Cir. 1995), it also utterly fails to "articulate those specific common elements sought to be protected" throughout its entire line of fixtures for which Plaintiff seeks protection.   Yurman, 262 F.3d at 118.

Lastly, Plaintiff's argument that the Moving Defendants "cannot claim lack of notice of National's trade dress" because they allegedly "used National's plans to virtually duplicate National's products" (Opp. Mem., p.8) misses the point entirely: The issue is not whether the Moving Defendants copied National's fixtures; the issue is whether Plaintiff has identified a *product design trade dress* that is distinctive and deserving of protection from copying under the Lanham Act. Absent such protection, there is no prohibition from copying National's products. It is well settled that under the Lanham Act that "the defendant . . . may copy plaintiff's goods slavishly down to the minutest detail: but he may not represent himself as the plaintiff in their sale." Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 157, 109 S.Ct. 971, 981 (1989). "What [Plaintiff] fails to appreciate is that copying is not always discouraged or disfavored and can have salutary effects." Antioch Co. v. Western Trimming Corp., 347 F.3d 150, 160 (6th Cir. 2003) (citations omitted). "As the Supreme Court has advised, dress trade

protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products. Unless an intellectual property right protects a product, competitors are free to copy at will." Id. (citations omitted).

Accordingly, absent an articulation of the specific elements which comprise its product design trade dress, National cannot provide any notice to any competitor that its product design trade dress is deserving of Lanham Act protection.

**B.    The Allegations Fail to State Any Claims Based Upon False Designation of Origin**

Plaintiff also argues (Opp. Mem. pp.12-13), that the term "origin" in the Lanham Act does not refer to the origin of the tangible manufactured goods, relying on the decision in Waldman Publishing Corp. v. Landoll, Inc., 43 F.3d 775 (2d Cir. 1994). National's reliance on Waldman is entirely misplaced. First, the holding in Waldman was explicitly restricted to reverse passing off cases involving written works. Waldman explicitly distinguished itself from typical passing off cases, and recognized that "reverse passing off as applied to a written work in involves somewhat different concepts. *In the context of written works*, the Lanham Act may be used to prevent the misappropriation of credit properly belonging to the original creator of the work." Id., 43 F.3d at 780-781. (Emphasis supplied) (citations omitted) "*In this context* the Lanham Act prohibits not only . . . the relabeling of a printed work . . . but also the reproduction of a work with a false representation as to its creator." Id. at 781.   Accordingly, the rationale and holding in Waldman, by its terms, applies only to written works.

Secondly, and more importantly, Waldman is directly at odds with the recent and controlling decision of the Supreme Court in Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 123 S.Ct. 2041 (2007), which unlike Waldman, was not limited to a narrow set of facts, and is broadly applicable to *all* claims seeking protection under the Lanham Act. Despite

4

Plaintiff's argument, there is nothing in the opinion in Dastar which even suggests, let alone stands for the proposition, that the Court's definition of the term 'origin' under the Lanham Act is restricted to "copyright" claims as opposed to "trademark" claims. Dastar clearly demonstrates that its holding is applicable to all claims brought under the Lanham Act, as it even refers to "tangible goods" in holding that in "reading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were *not* designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept or communication embodied in those goods." Dastar, supra, 539 U.S. at 37, 123 S.Ct. at 2050.   Simply stated, National's argument (Opp. Mem. p.14), that Dastar is limited to "plaintiffs who sought trademark protection for their goods under copyright law" is not supported by the Court's decision.

Similarly, National's reliance on Walker Mfg., Inc. v. Hoffman, Inc., 261 F.Supp.2d 1054 (N.D. Iowa, 2003), is also unavailing.  First, Walker largely relies on Waldman, which is inapplicable.  Second, and more importantly, Walker was rendered by a district court in Iowa four years prior to the decision in Dastar, and is certainly not controlling.  Dastar recites the current and controlling standard to be used in analyzing claims for false designation of origin under the Lanham Act:  The phrase *origin of goods* " refers to the producer of the tangible item offered for sale, not the origin of any idea or concept embodied in those goods."  Dastar, *supra*. National conceded in its pleading (Am.Compl. ¶48) and in the Opp. Mem. (p.13) that the Moving Defendants, and not National, are the producers of the tangible item offered for sale and therefore, the "origin of goods" under the Lanham Act is the Defendants, not the Plaintiff. [3]

---

[3] Plaintiff again misses the point  in the Opp Mem (p.13) by arguing that the "Defendants . . . claim[  ] that they would manufacture fixtures identical to those in National's specification sheets . . . is not a controlling distinction."

Accordingly, National's claims for reverse palming off and false designation of origin fail as a matter of law.

**C.    Plaintiff Has Failed to Allege That Defendants Misrepresented an Inherent Quality or Characteristic of Its Light Fixtures**

Plaintiff admits that in the Second Circuit, in order to state a claim for false advertisement under the Lanham Act, "a Plaintiff must show that the defendants misrepresented an inherent quality or characteristic of the product." Malaco Leaf, AB v. Promotion in Motion, Inc., 287 F.Supp.2d 355, 378 (S.D.N.Y. 2003).    Plaintiff attempts to qualify this requirement by arguing that it should be entitled to "develop its evidence" to prove that the Moving Defendants misrepresented an inherent quality or characteristic of National's light fixtures, relying on National Ass'n of Pharmaceutical Mfrs., Inc. v. Ayerst Lab, 850 F.2d 904, 917 (2d Cir. 1988). Plaintiff's reliance on Ayerst, is misplaced.  In Ayerst, the Court decided that Plaintiff should be allowed to develop its evidence only after noting that the Plaintiff alleged that Defendants "conveyed the false impression that [its product] is therapeutically superior." Id. Accordingly, plaintiff was permitted to develop its evidence only after plaintiff alleged that Defendant misrepresented an inherent quality of its product, i.e., that its product was "therapeutically superior." The Amended Complaint is utterly devoid of any allegation that any defendant misrepresented the inherent quality (or characteristics) of any light fixtures.  Plaintiff's claim for false advertisement under the Lanham Act fails as a matter of law.

---

(Opp. Mem., p.13).  This distinction is entirely controlling:  By conceding that the Moving Defendants produce the tangible goods, and not National (Am.Compl. ¶48), and by allegedly advising potential customers they could "manufacture goods just like National's for a less expensive price (Am.Compl. ¶40), it is impossible that Defendants "misrepresented the origin of the goods."  Again, Plaintiff's repeated focus on the allegation that Defendants copied their fixtures (and even advising the public that it copied their fixtures) does not make such copying actionable, as explained above. See pp. 3-4, supra.

**D.**  **Plaintiff's Failure to Allege Any Agency Relationship**

In a wholly conclusory fashion, National groups all of the defendants together in claiming that they should all be held liable for everything, without any specific factual allegation from which one can discern a basis for any single defendant having either actual or apparent authority to act on behalf of any other defendant.  As set forth in the Moving Mem., merely reciting that "each Defendant was at all times relevant hereto a controlling person, agent and/or alter ego of each other Defendant" (Am.Compl., ¶15) is insufficient as a matter of law to state a claim for breach of contract based upon either actual or apparent authority of an agent.  See Cannon v. Douglas Elliman, LLC, 2007 WL 4358456 (S.D.N.Y. 2007).

Plaintiff relies upon Commercial Financial Services, Inc. v. Great American Ins. Co. of New York, 381 F.Supp.2d 291 (S.D.N.Y. 2005) in support of its claim that it has adequately pled an agency relationship under New York law, because "conclusory allegations of actual or apparent authority is sufficient under federal pleading rules." Id. However, Commercial Financial is clearly distinguishable, for at least two reasons:  First, Commercial Financial relied upon a district court decision from the Northern District of Illinois, which did not apply the New York law of Agency in reaching its decision.[4]  Second, the Court found sufficient *factual* allegations in the pleading which could support the existence of an agency relationship, such as the *factual* allegation that the alleged agent had placed its "countersignatures on policies" issued by the alleged principal and that the alleged agent had signed documents as an "authorized representative" of the alleged principal.  These specific factual allegations were sufficient to establish that the principal "either expressly or impliedly authorized" the agent to act on its behalf. Id.

---

[4] See Guaranty Residential Leasing , Inc v. Int'l Mortgage Center, Inc., 305 F.Supp.2d 846, 861-2 (N.D.Ill. 2004).

7

In contrast, here it is beyond dispute that (i) Galaxy did not sign the Agreement; (ii) Bregman did not sign the Agreement; (iii) Lamberg did not sign the Agreement; (iv) pursuant to the plain terms of the Agreement, there is no indication that Bridge signed the Agreement on behalf of any entity other than itself; and finally, and most importantly, (iv) there is no factual allegation that Galaxy, Bregman or Lambert communicated to National that Bridge was authorized to sign the Agreement on behalf of any of them, as is required under New York law to establish an agency by apparent authority.  Although Plaintiff argues that the Amended Complaint "alleges several facts pointing to an actual and apparent agency relationship," not surprisingly, it fails to specify such facts.[5]  The Amended Complaint does not contain a single factual allegation that could establish Bridge's actual authority to act as the agent of Galaxy, Bregman or Lambert.  Neither does the Complaint contain any factual allegations which could establish that Galaxy, Lambert or Bregman communicated to National that Bridge had actual authority to sign the agreement on their behalf.  The only factual allegation in the Complaint is that "Mesa and Fredella clearly conducted themselves at those meetings as Galaxy's decisionmakers."  However, under well settled law in New York, "an agent cannot, through his own acts, cloak himself with apparent authority."  Rosza v. May Davis Group, Inc., 187 F.Supp.2d 123, 130 (S.D.N.Y. 2002).  Accordingly, this single factual allegation is insufficient to establish that Bridge had either actual or apparent authority to sign the agreement as agent for anyone other than itself.

Finally, Plaintiff's argument that Bregman and Lambert can be held liable for breach of contract because they allegedly engaged in unfair competition (Opp. Mem., p.20 -21) misses the

---

[5] National claims that the Agreement provides that "Bridge's and Galaxy's agents, employees or representatives, including their directors and officers are obligated to keep confidential information confidential." (Opp. Mem., p.20).  However, Galaxy cannot be bound by the terms of the Agreement that it never signed simply because National inserted its name therein.  Such a result would turn the entire body of the New York law of contracts and agency on its head.

mark as well. Plaintiff confuses two separate and distinct claims: breach of contract and unfair competition. The unfair competition claim is irrelevant to the issue of whether Bregman, Galaxy and Lambert can be held liable for breach of a contract in respect of which they are neither parties nor signatories. National has failed to state a claim for breach of contract against Galaxy, Lambert and Bregman.

**E.    The Application of Section 1312 of the N.Y. Business Corporation Law**

National's argument that a state door closing statute, such as NYBCL §1312, may not impede a diversity action brought in federal court, is directly contrary to current, controlling law. National relies on Grand Bahama Petroleum Co., Ltd v. Asiatic Petroleum Corp., 550 F.2d 1320 (2d Cir. 1977).[6] However, the Second Circuit has held thereafter in Netherlands Shipmortgage Corp., Ltd. v. Madias, 717 F.2d 731, 735 (2d Cir. 1983), that Section 1312 *can* preclude an unauthorized foreign corporation from maintaining a diversity action in New York federal court.

In addition, with respect to National's argument that Defendants' must show that the business is 'wholly intrastate,' this citation to Dominio Media, Inc v. Kranis, 9 F.Supp.2d 374 (S.D.N.Y. 1998) is taken out of context, and its relevance to the issue of whether a plaintiff must be authorized pursuant to NYBCL §1312 is vague at best. Dominio is further distinguishable because it did not even reach the issue of whether Section 1312 of the NYBCL precluded plaintiff from maintaining this action, finding instead that because "defendants neither pleaded the defense . . . nor alleged in their answer that [plaintiff], at the time this action was commenced, was doing business in New York, Defendants therefore have waived the defense." Id., 9 F.Supp.2d at 385. Furthermore, with respect to the issue of whether Section 1312 could

---

[6] National's citation to Grand Bahama contains a typographical error, reflecting that the Second Circuit decision was rendered in 1997, when it was actually rendered in 1977, three years before the Second Circuit's controlling decision in Netherlands Shipmortgage, supra.

9

preclude Plaintiff from maintaining an action in New York, the Court declined to decide this issue.

The issue is whether National's conduct rises to the level of permanent, continuous and regular business activity within New York State. National's reliance on cases in which plaintiff has "an office for transacting business" in New York or a "telephone listing" in New York is disingenuous (Opp. Mem., pp. 33-34). National has both a Manhattan telephone listing (212-751-1600) and a showroom in Manhattan located at 42 West 38th St., which can be viewed on its website at www.natltg.com. Accordingly, its argument that its business is not "intrastate" or "permanent and consistent" is unavailing.[7] Combined with the admissions by National that the bulk of National's clients are located in the metropolitan New York area and its fixtures are installed in every major office building in New York City (Amended Complaint, ¶¶ 48, 25), National cannot now argue that it needs discovery to determine whether it has run afoul of NY BCL 1312. National's failure to obtain authority to transact business in New York mandates that it be precluded from maintaining this action.

## CONCLUSION

For all of the foregoing reasons, and those set forth in the Moving Mem., the Motion should be granted in its entirety, together such other and further relief as the Court deems proper.

Dated: New York, New York
      September 5, 2008

                          TODD & LEVI, LLP

                          By: _____
                             Jill Levi (JL 5223)
                        444 Madison Avenue, Suite 1202
                        New York, New York 10022
                        (212) 308-7400
                        Attorneys for the Moving Defendants

---

[7] Allenberg Cotton Co. v. Pittman, 419 U.S. 20, 95 S.Ct. 260 (1974), is inapplicable because as demonstrated by its own pleading, it engages in the requisite intrastate activities sufficient to apply NYBCL 1312.

10